## 32202. AMERICAN LIFE INSURANCE COMPANY OF BIRMINGHAM, ALABAMA *v.* STONE.

DECIDED NOVEMBER 11, 1948.  REHEARING DENIED DECEMBER 3, 1948.

*Lewis & Sell,* for plaintiff in error.

*Miller, Miller & Miller,* contra.

PARKER, J. ■ As to count 1 and the demurrers thereto, the controlling questions are, whether said count stated a cause of action based on allegations showing "sickness" within the meaning of the policy, and if so, whether the plaintiff's prior physical condition caused by the hernia would bar a recovery. The de-

fendant's contention is that the physical disability of the plaintiff resulting from a hernia operation is not a sickness or disease, but is the result of an injury.

"Sickness means any affection of the body which deprives it temporarily of the power to fulfill its usual functions." Code, § 102-103. The defendant says that this definition is applicable only in the construction of statutes, but it appears that the definition is a codification from the decision of this court in *Martin v. Waycross Coca-Cola Bottling Co.*, 18 *Ga. App.* 226, 229 (89 S. E. 495), which was an action for damages based on the alleged negligence of the defendant causing sickness of the plaintiff. That decision quotes the definition of sickness in Black's Law Dictionary as including "any morbid condition of the body . . which for the time being hinders and prevents the organs from normally discharging their several functions." The definition of sickness contained in our Code is stated in 36 Cyc. 436. This same definition of sickness has been approved in the Montana case of Murray Hospital *v.* Angrove, 92 Mont. 101 (10 Pac. 2d, 577), and in Alabama in National Casualty Co. *v.* Hudson, 32 Ala. App. 69 (21 So. 2d, 568). The text in 45 C. J. S., Insurance, 970, § 893, states that "Disability resulting from hernia is included in a policy covering disability resulting from illness," citing the Texas case of Massachusetts Bonding & Insurance Co. *v.* Florence, 216 S. W. 471; and we think that "illness" and "sickness or disease" are synonymous terms. See 12 Words and Phrases, 617.

In the absence of Georgia cases holding to the contrary, we are constrained to hold that, under the allegations of count 1, it was a question for the jury to say whether or not the disability of the plaintiff was the result of a sickness within the meaning of the policy. While a hernia is frequently caused by an accident or an injury, it does not follow that a hernia is never the result of a sickness or disease. In Gould's Dictionary of Medicine (1894), pages 380-392, several kinds of hernia are tabulated as diseases, and on page 561 a hernia is defined as "a tumor formed by the protrusion of the contents of a cavity (usually the abdominal) through its wall." In Gray's Attorneys' Textbook of Medicine (2d ed., 1940), page 780, the author discusses hernia

due to accident and hernia not due to accident. In Anatomy and Allied Sciences for Lawyers by English (1941), page 199, the two greater groups of hernia are considered as "congenital" and "acquired." Congenital hernia involves the existence of a hereditary muscular weakness in the abdominal wall, whereas an acquired hernia may result from obesity or from various kinds of traumatism. Paragraph 4 of the petition, in both counts, alleged that the plaintiff had a hernia at the time the application was taken, "which had developed on January 4, 1946," and there was no demurrer to these allegations on the ground that they did not show how the hernia developed or what caused it.

The only Georgia case cited by the defendant in support of its contention that the disability of the plaintiff was the result of an injury and not a sickness or disease is *Liberty Mutual Co.* v. *Blackshear,* 197 *Ga.* 334 (28 S. E. 2d, 860). That was a compensation case dealing with the meaning of the term "hernia" as used in the statute. We do not think that anything said therein is contrary to the conclusion we have reached in this case. The Georgia Workmen's Compensation Act (Code, § 114-412), which was under consideration in the *Liberty Mutual Co.* case, seems to recognize that a hernia may occur without an accident or injury in providing for "compensation for hernia resulting from injury by accident," and thereby excluding congenital hernias and hernias acquired without injury or accident. The defendant cites some foreign authorities tending to support its contentions, but the greater weight of authority seems to sustain the conclusion we have reached.

■ The next question presented with reference to count 1 is whether the plaintiff was barred from a recovery because of the hernia condition which existed prior to the issuance of the policy. Under the ruling in *Metropolitan Life Ins. Co.* v. *Hale,* 177 *Ga.* 632 (170 S. E. 875), we do not think that the plaintiff was barred. Count 1 alleges that the agent of the company, at the time the application for the policy was taken, was advised by the insured that he had a hernia, and that the agent was asked by the insured if the policy would cover any hospital expense and disability that might arise in the event said hernia was aggravated, and that the insured was assured by the agent that said policy would cover such expenses. Under these allegations, and in the absence

of anything in the policy limiting the agent's authority, the agent's knowledge was the company's knowledge. "Conditions which enter into the validity of a contract of insurance at its inception may be waived by the agent and are waived if so intended." *Mechanics &c. Ins. Co.* v. *Mutual Real Estate &c. Assn.,* 98 *Ga.* 262 (25 S. E. 457). "Limitations in an insurance policy upon the authority of the agent of the company to waive the conditions of the contract of insurance are to be treated as referring to waivers made subsequently to the issuance of the policy." *Johnson* v. *Ætna Ins. Co.,* 123 *Ga.* 404 (51 S. E. 339, 107 Am. St. R. 92); *Gulf Life Ins. Co.* v. *Bloodworth,* 73 *Ga. App.* 102 (35 S. E. 2d, 662).

■ Count 2 contained the same allegations made in count 1, and also alleged that the company had knowledge of the plaintiff's previous hernia condition, communicated by the insured to the agent at the time the application was taken, and issued the policy with that knowledge, and thereafter charged, accepted, and retained several premiums on said policy, and thereby waived any defense it might have had based on the plaintiff's previous condition. Whether the alleged knowledge to the company through its agent of the plaintiff's condition amounted to a waiver, or was more in the nature of notice and estoppel, seems to be immaterial. We think that the rulings on the demurrers to the second count are controlled by the holding in *Metropolitan Life Ins. Co.* v. *Hale,* supra, for the reasons pointed out in division 2 of this opinion.

The defendant relies on *Fowler* v. *Preferred Accident Ins. Co.,* 100 *Ga.* 330 (28 S. E. 398), *Life & Casualty Co. of Tennessee* v. *Williams,* 200 *Ga.* 273 (36 S. E. 2d, 753, 163 A. L. R. 686), *Mitchener* v. *Union Central Life Ins. Co.,* 185 *Ga.* 194 (194 S. E. 530), *Fowler* v. *Liberty National Life Ins. Co.,* 73 *Ga. App.* 765 (38 S. E. 2d, 60), *Quillian* v. *Equitable Life Insurance Society,* 61 *Ga. App.* 138 (6 S. E. 2d, 108), and *Life & Casualty Ins. Co.* v. *Carter,* 55 *Ga. App.* 622 (191 S. E. 133). We have considered all of these cases and do not think that they require a different holding in the instant case. In most of the cases cited the policy or the application contained a limitation on the authority of the agent to waive any condition in the policy, while the policy (the

104

application is not before this court) here involved contains no such limitation. See *National Accident & Health Ins. Co.* v. *Davis*, 179 *Ga.* 595 (176 S. E. 387). Furthermore, there is nothing in the policy at variance with the oral representations alleged to have been made by the agent of the company to the insured at the time the application was taken. Although the insured had a hernia in January, 1946, it appears from the petition that the hernia was not of sufficient severity to be disabling to any extent prior to September 15, 1947, when the policy was written, and we think that it is a question for the jury to say whether or not a hernia not disabling to any extent was a sickness within the meaning of the policy. If the jury should find that the hernia condition of the plaintiff prior to the issuance of the policy was not an "affection of the body which deprives it temporarily of the power to fulfill its usual functions," it would not have been a sickness within the definition of the term contained in the Code, § 102-103. If the insured had a hernia condition which did not amount to sickness prior to the issuance of the policy, it would be immaterial whether he made any representations as to such hernia, and likewise immaterial as to whether the agent made any assurances respecting said hernia being covered by the policy. Our conclusion is that count 2 presented jury questions, under all the facts of this case, as to whether the insured was sick within the meaning of the policy before it was issued, and if so, was that defense waived or was the company estopped from pleading it?

Other cases cited by the defendant, some of which are not referred to herein, are so different on their facts as not to be applicable to this case.

The court did not err in overruling the demurrers.

*Judgment affirmed. Sutton, C. J., concurs. Felton, J., concurs in the judgment.*