40033. LOVETT v. AMERICAN FAMILY LIFE INSURANCE COMPANY.

Decided April 10, 1963.

604

*Marson G. Dunaway, Jr.,* for plaintiff in error.

*Cecil D. Franklin,* contra.

FELTON, Chief Judge. The issue raised by this appeal from the granting of the nonsuit is the sufficiency of the evidence to sustain the petition.

"If the petition sets out a cause of action, and the plaintiff proves every fact charged, but, on cross-examination or otherwise, disproves his right to recover, by establishing the existence of other undisputed defensive facts which show that he is not

entitled to a verdict, then a nonsuit should be granted." *Evans v. Josephine Mills,* 119 Ga. 448 (2) (46 SE 674); *Lewis v. Bowen,* 208 Ga. 671 (a) (68 SE2d 900); *Caldwell v. Knight,* 92 Ga. App. 747 (89 SE2d 900); *Williams v. Smith,* 210 Ga. 325, 329 (80 SE2d 289). Dr. C. M. Smith, who performed the surgery on the plaintiff, testified that such pregnancies *usually* rupture within "six weeks or less," then went on to say that in his opinion the *plaintiff's* particular pregnancy had commenced *six weeks* prior to the operation, and that he estimated the beginning date of her tubal pregnancy as January 30, 1961, at the earliest. Thus the tubal pregnancy—the condition necessitating the hospitalization and surgery—had already been in existence for 15 days before the policy date, according to the surgeon's testimony. Even if the pregnancy did commence somewhat less than six weeks before the date of the operation, there was a leeway period of two weeks between the earliest possible date of commencement and the policy date. The policy provides that the sickness must be due to disease "originating during the term of this policy," which means after the effective date of the policy, February 15. The fact that the diagnosis of the disease was not made until after both the date of the filing of the application and the effective date of the policy does not mean that the disease originated during the term of the policy. The policy specifies that the disease must have *originated*—not have been discovered or diagnosed—during the term of the policy. In the authorization and consent on the application for the insurance the plaintiff agreed that "any hospital-surgical policy issued to me will not cover existing health impairments or deformities." The possibility that disease can exist even before there are any outward manifestations thereof is contemplated by the definition of "disease," in Black's Law Dictionary, 4th Ed., as "Deviation from the healthy or normal condition of any of the functions or tissues of the body; and alteration in the state of the body or of some of its organs, interrupting or disturbing the performance of the vital functions, and causing or threatening pain and weakness." A tubal pregnancy is a deviation from the normal condition of the functions or tissues of the body which "threatens" pain, even from its initial onset and before it "causes" pain, and it disturbs the natural performance

of the vital function of child bearing. As expressed by the late Judge Townsend in *Reserve Life Ins. Co. v. Peavy*, 94 Ga. App. 31, 34 (93 SE2d 580), ". . . [N]o matter what construction is applied, one cannot be literally 'free from disease' if there are incipient in his body the germs *or other inherent conditions* [emphasis supplied] which will for a certainty incapacitate him and which are within themselves the direct and proximate cause of such sickness. When the policy excludes 'sickness the cause of which originates' before the issuance of the policy or within a 15-day period thereafter, it can mean only that the cause of the illness originates or begins to establish itself *in the body of the insured* during that period of time. If the disease is beginning to establish itself, then the plaintiff is not 'free of disease' in the literal or absolute sense." Insurance contracts provide coverage which is, and must be, limited by the carefully chosen wording thereof. As stated by Circuit Judge Sibley in Davis v. Jefferson Standard Life Ins. Co., 73 F2d 330, "Courts have no more right by strained construction to make the policy more beneficial by extending the coverage contracted for than they would have to increase the amount of the insurance." Quoted in *Prudential Ins. Co. of America v. Kellar*, 213 Ga. 453, 458 (99 SE2d 823).

The plaintiff cites the following in support of her contention that the disease from which her sickness developed did not originate until it was positively diagnosed: 53 ALR2d 686, 688, 689; *National Life Ins. Co. v. Bean*, 15 Ga. App. 661, 662 (4) (84 SE 152); *American Life Ins. Co. v. Stone*, 78 Ga. App. 98 (1) (50 SE2d 231); *Wooten v. Life Ins. Co. of Ga.*, 93 Ga. App. 665, 669 (5) (92 SE2d 567). An examination of these authorities reveals that they all dealt with various diseases, the time of origination of which could not be established by medical evidence. In the present case, however, the onset of the disease was practically contemporaneous with the commencement of pregnancy and there was positive and uncontradicted medical testimony which established that the origin of the disease was prior to the policy date. Such a matter, being peculiarly a medical question requires medical testimony. The plaintiff cites *Code* § 102-103, which defines sickness as "any affection of the body which deprives it temporarily of the power to fulfill its usual functions." While

this might indicate that there was no actual sickness prior to the policy date, under our construction of the phrase "sickness due to disease originating during the term of the policy," the *disease* must have so originated, which it did not in this case.

The plaintiff further contends that the defendant's first rejection of her claim, on the ground that it was barred by the policy's nine months' waiting period for maternity benefits, estopped it from later asserting the defense of a pre-existing condition. This contention is without merit. "The doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom." *Reserve Life Ins. Co. v. Ramsey,* 98 Ga. App. 732 (2) (106 SE2d 820) and citations.

The evidence failed to sustain the prayer for damages for the expense of the appendectomy; the doctor testified that the plaintiff's admission to the hospital on March 3 was for the purpose of removing the fetus from the ruptured tube and that the appendectomy was performed merely as a convenience while the appendix was already exposed. The sickness, therefore, was not caused by the appendix, and its removal under such circumstances is not covered by the policy.

The plaintiff cites the cases of *O'Connell v. Supreme Conclave,* 102 Ga. 143, 147 (2) (28 SE 282, 66 ASR 159), and *Wooten v. Life Ins. Co. of Ga.,* 93 Ga. App. 665, 669 (5), supra, to support her contention that the burden of proof is upon the defendant to prove that under such coverage the illness preceded the date of the policy. These cases are distinguishable from the present one in that in both of them the plaintiff-insured had made out a prima facie case sufficient to go before a jury and the burden of introducing evidence was shifted to the defendant by the defendant's assertion of a defense to the action, whereas in the present case the plaintiff has failed to carry the burden of proof in order to establish a prima facie case. "The burden of proof generally lies upon the party asserting or affirming a fact and to the existence of whose case or defense the proof of such fact is essential. If a negation or negative affirmation be so essential, the proof of such negative lies on the party so affirming it." *Code*

§ 38-103. The burden of proof is determined by pleadings, and where a party has the burden of proof to establish a fact by the preponderance of the evidence, it remains on him throughout the trial unless the defendant admits a prima facie case by the plaintiff. *Richter Brothers v. Atlantic Co.*, 59 Ga. App. 137, 141 (200 SE 462), and citations. See *Interstate &c. Ins. Co. v. Baldwin*, 105 Ga. App. 196 (2) (123 SE2d 899).

The failure of the evidence to prove that the disease causing the medical and hospital expense originated subsequently to the date of the policy—a condition made a prerequisite to recovery by the terms of the contract—subjected the action to a nonsuit. Accordingly, the court did not err in its judgment granting the nonsuit.

*Judgment affirmed. Eberhardt and Russell, JJ., concur.*