47557.   AETNA LIFE INSURANCE COMPANY v. SANDERS.

ARGUED OCTOBER 2, 1972—DECIDED OCTOBER 17, 1972.

*Carter, Ansley, Smith, McLendon & Quillian, Tommy T. Holland,* for appellant.

*Roland Stokes Neeson,* for appellee.

STOLZ, Judge. 1. The admission in evidence, over objection

on the ground of hearsay, of the plaintiff's testimony as to representations as to her insurance coverage made to her by the contended agent of the defendant, even if error as contended in enumerated errors 1 and 2, is rendered harmless error by our ruling in Division 3 hereinbelow.

2. Enumerated errors 3 and 4 complain of the trial judge's permitting the plaintiff to reopen her case for the purpose of introducing in evidence the master policy after the plaintiff had rested and the judge had overruled (erroneously, it is contended) the defendant's motion for a judgment. Even if the judge thereby abused, or even failed to exercise, his discretion in the matter, this would not constitute harmful error, since the defendant had produced the policy in open court, as it had agreed in its answer to do.

3. Enumerated error 5 is the trial judge's conclusion of law that "[for purposes of this particular case] the word disease encompasses the condition of exogenous obesity which contributes to urinary incontinence causing unsuccessful anterior repairs, all as a direct result of the obesity."

Since the policy does not specifically exclude the jejuno-ileostomy operation which is the basis for the plaintiff's claim, and does not specifically define the term "disease," we must determine whether the contract was susceptible of the construction given it by the trial judge. See *Hammock v. Allstate Ins. Co.*, 124 Ga. App. 854, 857 (186 SE2d 353). "[A] policy of insurance will be construed liberally in favor of the object to be accomplished, and its provisions will be strictly construed against the insurance company, and where it is susceptible of two constructions, that construction will be adopted most favorable to the insured." *Moore v. Allstate Ins. Co.*, 108 Ga. App. 60 (1) (131 SE2d 834) and cit., decided subsequent to the enactment of Ga. L. 1960, pp. 289, 667 (*Code Ann.* § 56-2419). See also *Code* § 20-704 (5).

Although the appellant insurer urges the applicability of a somewhat more restrictive definition of "disease," in its answer to the plaintiff's first interrogatories, it concedes

that it does not disagree with the general definition of the term in Black's Law Dictionary (4th Ed.), as "Deviation from the healthy or normal condition of any of the functions or tissues of the body; an alteration in the state of the body or of some of its organs, interrupting or disturbing the performance of the vital functions, and causing or threatening pain or weakness." This definition has been recognized and accepted by this court in construing the terms of an insurance contract. *Lovett v. American Family Life Ins. Co.,* 107 Ga. App. 603, 605 (131 SE2d 70). With regard to the second portion of the above definition, there was evidence that, prior to the operation, the plaintiff had undergone a D. and C. operation and had the following symptoms: urinary incontinence, constipation, cystitis, headaches, leg cramps, back trouble, nervousness, and fatigue. The evidence showed that virtually all of these complaints were alleviated by the operation, which successfully reduced the plaintiff's weight from 206 to 135 pounds. The defendant introduced in evidence a letter from the surgeon who performed the operation, stating that the plaintiff's obesity "is to such an extent that it markedly impairs her long term health," with which medical opinion the defendant's witness, a physician, concurred. The plaintiff introduced in evidence the following excerpt from Cecil & Loeb, Textbook of Medicine (9th Ed.), Saunders, pp. 692-693: "Obesity, if persistent, impairs health and shortens life. Dublin and Lotka found that 'the penalty of overweight is one-fourth to three-fourths excess in mortality.' The hazard of obesity increases with its degree of severity and with the age of the subject, so that persons who are only 10 pounds overweight have an increase above the average death rate of 8 percent; when 20 pounds overweight, of 18 percent; 30 pounds overweight, of 28 percent; 50 pounds overweight, of 56 percent. Death from cardio-vascular renal disease is 62 percent more frequent in the obese than in persons of *normal* weight. Cirrhosis of the liver, appendicitis, biliary calculi, and liver and gallbladder cancer occur about twice as often in the obese; cerebral accidents and puerperal compli-

cations about one and one-half times as often. Twelve percent more of the obese die from accidents, possibly because of subnormal agility. Gallbladder disease is especially frequent in those overweight. Obesity predisposes to diabetes, expecially after age 40. The death rate from diabetes is about four times as great in the obese. The greater the obesity, the poorer the prognosis following surgical operations. Resistance to infections such as pneumonia is decreased." (Emphasis supplied.) The foregoing amply illustrates the effect of obesity, even in small degrees, of "interrupting or disturbing the performance of the vital functions, and causing or *threatening* pain or weakness." (Emphasis supplied.) The defendant contends that the obesity was merely a condition that created a pre-disposition to disease. "The possibility that disease can exist even before there are any outward manifestations thereof is contemplated by the definition of 'disease,' in Black's Law Dictionary." *Lovett v. American Family Life Ins. Co.*, 107 Ga. App. 603, 605, supra. The plaintiff's symptoms, listed hereinabove, could be found to be "outward manifestations" of existing disease or diseases, in either an incipient or developed state. Indeed, the urinary incontinence constituted a disease already diagnosed and unsuccessfully treated previously. (The defendant's own medical witness testified as to the causative relationship of obesity with urinary incontinence, which he classified as a disease.) Even if this were not so, however, sound medical practice and good common sense dictate that a patient should not, and should not have to, delay obtaining medical treatment for diseases, which medical science tells us are incipient, though not developed to the extent that they can be positively diagnosed. This would be contrary to the principles of preventive medicine.

Regarding the first portion of Black's definition, "Deviation from the *healthy* or *normal* condition of any of the functions *or tissues* of the body" (emphasis supplied), obesity certainly affects tissues, if not functions, of the body. That it is a deviation from the healthy or normal condition, is illustrated by the language in the Textbook of Medicine,

supra, to the effect that certain disease is more frequent in the obese than in persons of "normal" weight. Hence, even if a person is free of all outward manifestations of disease, if he has obesity, i.e., weight in excess of the healthy or normal amount for that individual, even though it is in a far lesser amount than the plaintiff's approximately 70 pounds, he can still be considered to have a "disease" under the definition in Black's Dictionary, as applied in the *Lovett* case, supra.

For the foregoing reasons, the trial judge did not err in his conclusion of law, complained of in enumerated error 5.

4. Enumerated error 6 is the trial judge's conclusion of law that "plaintiff, having used all other reasonable means available to her over a course of many years, found it necessary to subject herself to surgical treatment to cure her condition of exogenous obesity and to alleviate her problem of urinary incontinence, (and) should recover the charges for the medical and surgical service which were necessary for the treatment as recommended and approved by her attending duly licensed and accredited physician. Said charges being reasonable to that extent." The defendant complains that the testimony of its medical witness shows that the operation was not necessary in the plaintiff's situation, since the weight loss could have been accomplished by dieting, and that the surgeon who performed the operation made his determination of the advisability of the operation on the basis merely of the plaintiff's statement to him that she had already unsuccessfully tried "the more [accepted] method of treatment for obesity," such as diets, pills and shots.

The operation in question was "recommended and approved by a physician" attending the plaintiff, who determined that it was "necessary for the treatment of the . . . disease concerned," as required by the insurance contract. It is true that the physician was aided in his determination of the necessity of the operation by the plaintiff's statement of her history of unsuccessful attempts to lose weight by such varied techniques as diets, pills, shots, membership in

Weight Watchers, Inc., and hypnosis. Although he could not, and did not, rely exclusively upon this statement, it was nevertheless very persuasive, since it would obviously be in the plaintiff's interest to lose weight by a procedure which would be cheaper and involve less pain and other side effects than the operation in question, if at all possible. In addition to her statement, he conducted a personal observation and examination of the patient. "[T]he physician may, of course, give opinion evidence that the patient has a particular injury or disease (or is insane) based upon his personal observation and examination of the patient." *Argonaut Ins. Co. v. Allen,* 123 Ga. App. 741, 744 (182 SE2d 508) and cit. Furthermore, the physician testified that many obese persons eat moderately and still do not lose weight and that obesity is caused by such factors as heredity, the brain's centers controlling automatic bodily functions, nervous tension, and eating habits.

Even if it be conceded that there might have been some alternative treatment which could have been successfully employed for the plaintiff's disease of exogenous obesity, this fact does not, under the insurance policy, bar her right to recover surgical benefits for the operation. Article II, Section 2 of the policy provides: "No benefit shall be payable under this section (1) with respect to any medical treatment (whether involving injury or disease) other than the performance of surgical procedures, *whether or not the alternative treatment is in lieu of or accomplishes the same result as the performance of the corresponding surgical procedures;* . . ." (Emphasis supplied.)

The operation was a "surgical procedure," defined by Article II, Section 1 (b) (1) of the policy as, inter alia, "the incision . . . of any organ or part of the body, which the plaintiff's "attending, duly licensed and accredited physician" determined, based upon his personal observation and examination of her, to be necessary for the treatment of exogenous obesity, which the trial judge correctly ruled to be a disease within the purview of that term as used in the insurance contract. There is no showing by the defendant

that the amount of the expenses sought to be recovered, is unreasonable. Enumerated error 6 is without merit.

*Judgment affirmed. Bell, C. J., and Evans, J., concur.*