## 56295, 56456. BLUE CROSS OF GEORGIA/ATLANTA, INC. et al. v. GRENWALD; and vice versa.

WEBB, Judge.

Edward S. Grenwald filed a complaint seeking reimbursement for medical bills submitted to and refused by Blue Cross, plus interest, bad faith penalties and attorney fees; and for declaratory judgment that he was covered under his group policies for treatments received by him and his wife from Emory University School of Medicine and its staff physicians. Blue Cross counterclaimed seeking reimbursement of an initial sum paid to Grenwald. The case was tried without a jury and judgment entered denying bad faith damages and attorney fees, but directing Blue Cross to pay all properly submitted claims. The counterclaim was also denied and these appeals ensued. We affirm in both.

1. Grenwald was referred to Dr. Richard P. Michael by the Emory University School of Medicine on June 26, 1973 and was treated by Dr. Michael from then until February 9, 1977. Dr. Michael held a valid institutional license to practice medicine under the supervision of Dr. Bernard Holland of the Emory University School of Medicine from October 12, 1972 through October 12, 1973, and was properly supervised throughout the relevant period by Dr. Holland as required by Code Ann. §

84-927, then in effect. He was at all relevant times a Doctor of Medicine (MD) and a tenured, full professor of medicine at Emory. No person or board or party to this suit has ever contended that Dr. Michael is not an extraordinarily well-qualified and competent doctor.

During the relevant time, institutional licenses were issued for a period of 12 months to "any person. . . . who is employed by any medical college in the State of Georgia approved by the State Board of Medical Examiners of Georgia, upon request of the superintendent of such State institution or the dean of such medical college. . ." Code Ann. § 84-927. Somehow Emory allowed Dr. Michael's license to lapse for a period from October 13, 1973 through August 25, 1975. However, Dr. Michael continued as a full professor and saw patients throughout this period. The institutional license was renewed on August 25, 1975 and again on August 25, 1976, and on February 9, 1977 Dr. Michael was issued a full practice medical license pursuant to Code Ann. § 84-907.

Blue Cross insists it was not obligated to pay any claims made during the period during which the license was not renewed because Dr. Michael was not then a "physician" as defined and required by the provisions of its insurance policies. We disagree.

The insurance contract under which Blue Cross denied Grenwald reimbursement for medical treatment by Dr. Michael defines "physician" as: "Any Doctor of Medicine (MD) . . . licensed by the Composite Board of the State of Georgia or similar board of any other state, legally entitled to practice medicine and perform surgery . . ." Significantly, the contract draws no distinction between different types of licenses to "practice medicine." Code Ann. § 84-927, although not providing for a full practice license, did and still does allow medical school graduates to "practice medicine" under proper supervision.[1] Code Ann. § 84-901 defines the term

---

[1]Ga. L. 1977, pp. 332, 333, repealed this section as it was originally enacted by Ga. L. 1939, p. 319. Ga. L. 1977, pp. 334, 339, entirely superseded the former section, and was then entirely superseded by the present provision, Ga. L. 1978, p. 273.

"practice of medicine" as used in this Chapter to mean "holding one's self out to the public as being engaged in the diagnosis or treatment of disease, defects or injuries of human beings . . . with the intention of receiving therefor, either directly or indirectly, any fee, gift or compensation whatsoever. . ." Dr. Michael was in compliance with all of these provisions.

There is no statutory requirement to register an institutional license in the clerk's office of the superior court of the county of the doctor's residence.[2] The burden of obtaining the license is not upon the doctor, but upon the dean of the medical college in which he is permitted to practice under proper medical supervision. No notice was sent to Dr. Michael or to Emory regarding renewal or recording of the license. Neither during nor after the period that Dr. Michael's license was not renewed did the Board of Medical Examiners institute or take any action against Dr. Michael, or even question the continuing validity of the license, and Dr. Michael's right to act thereunder within the institution. Indeed, in light of the facts shown in this case, it is clear that had the dean requested reissuance at any time during the lapsed period, it would have been an abuse of the board's authority under Code Ann. § 84-927 to have denied renewal. In any event the license was automatically renewed without question each time it was requested.

The trial judge correlated Emory's omission of a formal request for renewal, or the recording thereof, to the doctrine of de facto as opposed to de jure corporations.

---

[2]Code Ann. § 84-908, requiring the recording of licenses with the clerk of the superior court of the county of the registrant's domicile, has not been applied to institutional licenses. The Secretary of the Board of Medical Examiners testified that notice of the recording requirement was given to holders of full practice licenses, but that no notice was given to holders of institutional licenses. The purpose of this statutory requirement is explained in *Murray v. Williams*, 121 Ga. 63 (48 SE 686) (1904).

Such entities, even if technically deficient in licensing, recording or incorporation, if otherwise operating legally and holding themselves out as properly licensed or incorporated are deemed able to transact business and to be held accountable. *Brown v. Atlanta R. &c. Co.,* 113 Ga. 462, 468 (1) (39 SE 71) (1901); *Hall v. Kimsey,* 48 Ga. App. 605 (3) (173 SE 437) (1934) and cits. The analogy is an apt one. And since no action was taken either against Emory, the dean, the supervising physician or Dr. Michael, and since Dr. Michael subsequently received a full practice license from the board, the doctrine of license by estoppel would likewise be appropriately applicable to the situation. See *Brown v. Atlanta R. &c. Co.,* 113 Ga. 462 (1), supra.

Blue Cross should not be allowed to escape liability under its contract of insurance by relying on statutes which are inapplicable under law, concededly inapposite to the facts of the case, and irrelevant to the contractual relationship between it and Grenwald. Nor should Grenwald, who has always been current in the payment of his premiums, be penalized through the too-technical construction of a licensing requirement over which neither he nor his doctor had any control. The holder of an institutional license to practice medicine is clearly within the definition of "physician" in the insurance contract drafted by Blue Cross, and if there is any doubt as to contractual definitions or coverage, the law requires construction of the contract in the policyholder's favor. Code Ann. § 56-2419. The trial judge determined that Dr. Michael was at all relevant times duly licensed to practice medicine as contemplated by the policy. This conclusion is amply supported by the law and the evidence and should not be disturbed by this court. *Hill v. Cockrell,* 141 Ga. App. 39 (232 SE2d 384) (1977).

2. It follows that Blue Cross' counterclaim for reimbursement of claims previously paid was correctly denied.

3. The question of law involved is one of first impression in Georgia and thus bad faith penalties under Code Ann. § 56-1206 were not warranted. *Aetna Fire Underwriters Ins. Co. v. Crawley,* 132 Ga. App. 181, 183 (2) (207 SE2d 666) (1974); *Ga. Farm Bureau Mut. Ins. Co.*

*v. Calhoun,* 127 Ga. App. 213, 215 (2) (193 SE2d 35) (1972); *Brown v. Seaboard Lumber &c. Co.,* 221 Ga. 35, 38 (142 SE2d 842) (1965).

*Judgments affirmed. Bell, C. J., Deen, P. J., Quillian, P. J., Smith, Shulman, Banke and Birdsong, JJ., concur. McMurray, J., dissents.*

ARGUED SEPTEMBER 5, 1978 — DECIDED NOVEMBER 28, 1978 — REHEARING DENIED DECEMBER 19, 1978 IN CASE NO. 56295 —

*Heyman & Sizemore, William B. Brown, George H. Myshrall, Jr.,* for appellants.

*Haas, Holland, Levison & Gibert, Richard N. Hubert,* for appellee.

MCMURRAY, Judge, dissenting.

This suit was brought by plaintiff to recover certain medical expenses under the provisions of a policy of insurance issued by defendants (now merged to form one insurance company). Plaintiff was treated by Dr. Richard P. Michael, an English medical doctor employed as a professor of medicine at Emory University School of Medicine. The dispute relates to the period of time beginning on June 23, 1976, when plaintiff initially received treatment until February 9, 1977, when Dr. Michael received a regular medical license. During a portion of the disputed period Dr. Michael held an institutional license which authorized him to practice medicine under proper medical supervision, in the medical college employing him, and at other times during the disputed period Dr. Michael held no current license to practice medicine. During the disputed period Dr. Michael was a resident of DeKalb County but at no time prior to February 9, 1977, was any certificate or license to practice medicine recorded with the Clerk of the Superior Court of DeKalb County.

After paying a sum based on an initial claim of plaintiff, the insurance company identified the disputed claim as suspect due to questions as to the license status of the physician, Dr. Michael. After an investigation no

further sums were paid to plaintiff.

Plaintiff brought this action for the balance of the disputed sum, and the insurance company counterclaimed seeking reimbursement of the initial sum paid to plaintiff. The case was tried before the court without a jury, and judgment was rendered in favor of plaintiff and against the defendant insurance company. However, the court denied plaintiff's prayers for punitive damages and attorney fees. The insurance company appeals in Case No. 56295, contending that Dr. Michael was not legally entitled to practice medicine and perform surgery during the disputed period, and that the insurance benefits are not to be provided under the terms of the insurance policy when the services in question are not rendered by a medical doctor legally entitled to practice medicine and perform surgery. Plaintiff cross appeals in Case No. 56456.

1. The insurance policy provided for payment of benefits for services rendered by a physician. Physician was defined under the terms of the policy as "[a]ny Doctor of Medicine (M.D.) or Doctor of Osteopathy (D.O.) licensed by the Composite Board of the State of Georgia or a similar board of any other state, legally entitled to practice medicine and perform surgery. . ." The insurance company contends that Dr. Michael was not legally entitled to practice medicine in Georgia during that portion of the disputed period during which he held a current institutional license because he had failed to cause his institutional license to be recorded in the office of the clerk of the superior court of the county in which he resided. Code Ann. § 84-908 (Ga. L. 1931, pp. 7, 37) provides that "[b]efore any person who obtains a certificate from the Board of Medical Examiners may lawfully practice medicine and surgery, he shall cause the said certificate to be recorded in the office of the clerk of the superior court of the county in which he resides . . . Each applicant receiving a certificate from the Board shall cause the same to be registered within 30 days."

Plaintiff contends that this Code section is inapplicable to Dr. Michael's institutional license. In *Murray v. Williams,* 121 Ga. 63, 64 (48 SE 686), the Supreme Court states that the purpose of registration of

physicians is to protect the public against incompetent and unqualified practitioners of medicine and "[o]ne who practices medicine without having registered as the code requires can not recover for his services." Plaintiff contends that the protection of registration is not necessary in regard to the institutional license because of the restrictions placed on the activities of the physician who holds the license and because of the provisions related to issuance of institutional licenses provided by Code Ann. § 84-927 (Ga.L. 1970, pp. 301, 312, since amended, Ga. L. 1977, pp. 334, 339; 1978, p. 223).

I disagree with plaintiff. The provisions governing the activities of the holder of an institutional license to practice medicine, as opposed to a regular license to practice medicine, are additional protections afforded the public in regard to physicians who have not yet proven that they meet the basic minimum requirements for examination by the Composite State Board of Medical Examiners or for the issuance of a permanent license to practice medicine and are not substitutes for the protection afforded by Code Ann. § 84-908, supra.

Dr. Michael having failed to register his institutional license to practice medicine with the clerk of the superior court of the county of his residence and at other times during the disputed period being entirely without a current license of any type to practice medicine, I would hold that Dr. Michael was at no time during the disputed period legally entitled to practice medicine. See also Code § 84-906 (as amended Ga. L. 1970, pp. 301, 305; 1972, p. 673); Code § 84-9914; Code § 84-907 (amended Ga. L. 1935, p. 412; 1966, p. 232; 1967, p. 826; 1970, pp. 301, 306; 1972, p. 847; 1976, p. 403, since amended, Ga. L. 1977, pp. 334, 335; 1978, pp. 1381, 1382).

2. Additionally, attention must be directed to that portion of the disputed period during which, due to the expiration of the term of the institutional license, Dr. Michael held no current license of any type to practice medicine. I do not believe that an individual who holds no license of any type to practice medicine can be viewed as "licensed by the Composite Board of the State of Georgia," or "legally entitled to practice medicine and perform surgery," so as to come within the definition of physician

as used in the insurance policy in question.

The majority applies a doctrine of license by estoppel to dismiss the absence of a license to practice medicine during a portion of the disputed period. The majority analogizes the omission of a formal request for renewal of Dr. Michael's institutional license to the doctrine of de facto as opposed to de jure corporations, an entity technically deficient in licensing recording or incorporation if otherwise operating legally and holding themselves out as properly licensed or incorporated are deemed able to transact business and to be held accountable. Under this reasoning in *Hall v. Kimsey,* 48 Ga. App. 605 (3) (173 SE 437), cited by the majority, the "Young L. G. Harris College" continued to operate after its charter had expired and to hold itself out to the public as a corporation. In a suit against it as "Young L. G. Harris College," to recover on open account for property and service furnished to it as that entity, it was not allowed to escape liability upon the ground that its charter had expired and there was no such corporation. The majority also cites *Brown v. Atlanta R. &c. Co.,* 113 Ga. 462, 468 (1) (39 SE 71), which recognizes that a party may have had no dealings with the persons composing an alleged corporation which would estop him from bringing in question their right to exercise corporate powers.

Here the insurance company has had no dealings whatsoever with Dr. Michael, with Emory University, or with the Composite Board of the State of Georgia. Nor do I see any manner in which plaintiff Grenwald's dealings may be imputed to the insurance company so as to estop it from questioning the licensing status of Dr. Michael.

*Brown v. Atlanta R. &c. Co.,* supra, also points out the requirement that in order for the license by estoppel principle to be applicable so that the corporation de facto may exist, a colorable compliance with the requirements of the law must be made. Here there was none and this should require an entirely different result than that reached by the majority.

3. I also disagree with the decision of the majority to absolve Dr. Michael of responsibility in relation to his own licensing status by placing the burden entirely upon Emory. Indeed, in the case of an institutional license the

institution in question, in this case Emory, does have responsibilities in relation to obtaining the license. This should not, however, absolve Dr. Michael of the responsibility of remaining informed and knowledgeable as to his licensing status, including a responsibility to refrain from practicing medicine whenever his license is allowed to expire.

It is true that Dr. Michael may have had limited control over the licensing process but he did have absolute control over his own activities. He should not be rewarded for disregarding *the licensing statutes enacted by the General Assembly of this state for the protection of the public.*

For the reasons stated above, I respectfully dissent and would reverse Case No. 56295. This would render moot the issues raised by plaintiff's cross appeal alleging error in the denial of his claim for bad faith damages and attorney fees. I would therefore affirm in Case No. 56456.