### 61483. GEORGIA INTERNATIONAL LIFE INSURANCE COMPANY v. HARDEN.

CARLEY, Judge.

In July of 1972, after suffering chest pains, Harden was admitted to the hospital. He was discharged in five days and returned to work after convalescing at home for a month. On January 27, 1973, Harden was admitted to the hospital with acute myocardial infarction. He was discharged on February 6, 1973, and subsequently returned to work. Although he was again hospitalized in July of 1973, the record is

somewhat unclear as to the exact underlying reasons.

On December 12, 1974, Harden obtained a loan from the bank to finance a new car. The loan documents reflect that Harden requested credit disability insurance. The premium for such insurance coverage was included in the loan and approximately two or three weeks later Harden received a policy from Georgia International Life Insurance Company (International). The policy contained the following language: "If a premium is shown for Disability Benefits in the above schedule, and if *sickness originating after the date of this policy and while this policy is in force . . . ,* shall require the Insured to be regularly treated by a licensed physician other than the Insured and shall wholly and continuously disable the Insured so as necessarily to prevent him from performing any and every duty pertaining to his occupation for a minimum period of the number of days duration of total continuous disability stated in the above schedule, the Company will pay, commencing with the day stated in the above schedule, one-thirtieth of the monthly benefit for each day of said disability occurring during the above term of the policy." (Emphasis supplied.)

On May 31, 1975, Harden suffered a massive heart attack, resulting in his total disability. Harden made a claim against International for disability benefits under the policy. His claims were denied, International informing him: "Your policy was issued with an effective date of December 12, 1974 and contains a provision which states that disability benefits will be payable for sicknesses originating after the date of the policy and while the policy is in force. The information we received indicates that the condition causing your disability has been present since 1973 and that you received treatment for that condition prior to the effective date, as well as after the effective date. Since your condition originated prior to the effective date, we are unable to be of service on your claim." After his claim was denied, Harden instituted the instant action against International, seeking disability benefits under the policy, damages for bad faith refusal and attorney's fees. International answered, denying that Harden was entitled to benefits under the terms of its policy. The case was submitted to the jury and a verdict in the amount of $6482.72 for disability benefits and $4500 for attorney's fees was awarded Harden. Judgment was entered on the verdict and International appeals.

1. Citing *Lovett v. American Family Life Ins. Co.,* 107 Ga. App. 603 (131 SE2d 70 ) (1963) and other decisions, International urges that under the evidence it was error to enter judgment on a verdict finding coverage under the terms of the policy. International contends that the medical testimony and the other evidence in the instant case demonstrate that Harden's disabling heart attack was

the result of coronary arteriosclerotic heart disease which pre-existed the policy and that, as was the case in *Lovett,* coverage would not be afforded under such circumstances.

. Under the terms of the policy in *Lovett* coverage was afforded for " 'sickness due to disease originating during the term of this policy.' " This phrase was construed to mean that "the *disease* must have so originated . . . " and, under such policy language, the fact that the evidence "might indicate that there was no actual sickness prior to the policy date" was of no consequence to the insured's claim. *Lovett,* 107 Ga. App. at 607, supra. "The fact that the diagnosis of the disease was not made until after both the date of the filing of the application and the effective date of the policy does not mean that the disease originated during the term of the policy. The policy specifies that the disease must have *originated* — not have been discovered or diagnosed — during the term of the policy . . . The possibility that disease can exist even before there are any outward manifestations thereof is contemplated by the definition of 'disease' . . . " *Lovett,* 107 Ga. App. at 605, supra. Therefore, the insured in *Lovett* was not entitled to benefits under the policy because the evidence established that "the onset of the disease [tubal pregnancy] was practically contemporaneous with the commencement of pregnancy and there was positive and uncontradicted medical testimony which established that the origin of the disease was prior to the policy date." *Lovett,* 107 Ga. App. at 606, supra.

Under the terms of the policy in the instant case, unlike that in *Lovett,* there is no requirement that in order for coverage to be afforded the disabling "sickness" be due to *a disease which itself originated after the policy date.* All that is required under Harden's policy with International is that the disabling "sickness" originate after the date of the policy with no requirement that if the "sickness" be the result of a disease, the disease itself must not pre-exist the policy date. Thus, unlike the policy in *Lovett,* the focus under the policy in the instant case is on the date of origin of the disabling "sickness" and not the origin of the underlying disabling "disease."

The question then becomes whether Harden's heart attack on May 31, 1975, was a disabling "sickness" under the policy. Code Ann. § 102-103, which is applicable in insurance cases, *American Life Ins. Co. v. Stone,* 78 Ga. App. 98, 101 (50 SE2d 231) (1948), defines "sickness" as "any affection of the body which deprives it temporarily of the power to fulfill its usual functions." The evidence in the instant case affirmatively establishes that Harden was not disabled due to sickness at the time the policy was entered into and that subsequently and while the policy was in force he suffered a disabling heart attack. We think this evidence authorized a recovery

under the policy. "A layman could well understand [the language of the policy] as meaning that such an occurrence [as Harden's heart attack] would be a sickness 'commencing' after and not before the inception of the policy period." *Lucas v. Continental Cas. Co.,* 120 Ga. App. 457, 459 (170 SE2d 856) (1969). Had International wished to exclude from coverage a disabling sickness which originated from a disease pre-existing the policy date, such a policy could have been issued. *Lovett,* 107 Ga. App. 603, supra. Instead, it chose to afford coverage for such disability as resulted from a sickness originating after the policy date, thus rendering unnecessary any inquiry into the date of origin of the disease which might underlie the disabling sickness. It was, therefore, not error to grant judgment on the verdict finding coverage under the policy.

Nothing in *American Life Ins. Co. v. Stone,* 78 Ga. App. 98, supra, requires a different result. In that case the insurer was contending that a hernia was, as a matter of law, a "result of an injury" and not a "sickness or disease" under the terms of the policy. In refuting this contention, the court quoted from authority to the effect that disability resulting from hernia would be covered under a policy covering disability resulting from "illness" and then stated: "[W]e think that 'illness' and 'sickness or disease' are synonymous terms. [Cit.]" *American Life Ins. Co.,* 78 Ga. App. at 101, supra. It is thus clear that the court was equating the phrase "sickness or disease" contained in the policy under scrutiny with the term "illness" contained in the cited authority. We do not think that *American Life Ins. Co.* stands for the proposition that the terms "sickness" and "disease" are synonymous terms under and in the applicable context of the policy in the instant case affording coverage for disabling "sickness." "The words 'sickness' and 'disease' are technically synonymous, but when given the popular meaning as required in construing a contract of insurance, 'sickness' is a condition interfering with one's usual activities, whereas disease may exist without such result; in other words, one is not ordinarily considered sick who performs his usual occupation, though some organ of the body may be affected, but is regarded as sick when such diseased condition has advanced far enough to incapacitate him. In determining what losses are covered by policies insuring against losses on account of disease or sickness, the general rule that ambiguous or uncertain provisions will be construed most favorably to the insured is applied." 43 AmJur2d 1121, Insurance, § 1206. In the context of the question of coverage afforded under the instant policy, the construction urged by International would be contrary to the applicable rules of construction. See *Lucas v. Continental Cas. Co.,* 120 Ga. App. 457, 459, supra.

2. International next urges that it was error to enter judgment on the verdict awarding attorney's fees under Code Ann. § 56-1206.

The proper standard for appellate review of an award under Code Ann. § 56-1202 " 'is that the judgment should be affirmed if there is *any evidence* to support it unless it can be said as a *matter of law* that there was a *reasonable defense which vindicates the good faith of the insurer.'* [Cit.]" *Colonial Life & Acc. Ins. Co. v. McClain,* 150 Ga. App. 883, 885 (258 SE2d 655) (1979). "[T]he insurer's defense must be evaluated because if there was 'reasonable and probable cause to make it' an award for damages and attorney fees for bad faith is not authorized. Not every defense bars a finding of bad faith. It is a defense which raises a reasonable question of law or a reasonable issue of fact though not accepted by the trial court or jury." *Colonial Life & Acc. Ins. Co. v. McClain,* 243 Ga. 263, 265 (253 SE2d 745) (1979).

Applying the foregoing authorities and being guided by the principle that it is the intention of Code Ann. § 56-1206 "to penalize [insurers] for resisting and delaying payment unless good cause was shown," *Colonial Life & Acc. Ins. Co. v. McClain,* 243 Ga. at 265, supra, we find it was error to enter judgment on the award of attorney's fees. Harden urges only that the fact International made no preliminary inquiries concerning his health demonstrates the insurer's "bad faith." Presumably the argument is that having failed to make such inquiries concerning any pre-existing condition, International was thereafter estopped in good faith to deny that coverage was afforded for disability arising from such a condition. Harden's argument goes to International's ultimate liability on the policy — whether or not International should be estopped to deny coverage — (see generally *Phillips v. Old Republic Life Ins. Co.,* 155 Ga. App. 537, 539 (4) (271 SE2d 676) (1980)), but not the "faith" with which International refused to pay Harden's demand. See generally *Travelers Ins. Co. v. Sheppard,* 85 Ga. 751, 765 (12 SE 18) (1890). "Bad faith" is shown by evidence that under *the terms of the policy* upon which the demand is made and under the facts surrounding the response to that demand, the insurer had no "good cause" for resisting and delaying payment. See generally *Security Ins. Co. v. Hudgins,* 87 Ga. App. 711, 712 (1) (75 SE2d 267) (1953). Under the terms of the policy in the instant case it was International's duty to pay, without delay or resistance, if Harden became disabled due to "sickness originating after the date of this policy" and we fail to see how this duty would be made more obligatory or the refusal to honor the demand made more frivolous by the fact that Harden's representations concerning his health were not a part of the policy. Either Harden was afforded coverage under the policy *as written* or

he was not. That Harden was not asked questions concerning the state of his health may be a factor in construing the language of the policy but it would not "estop" International to assert defensively its *construction* of the policy language, cf. *Wilson Marine Sales & Svc. v. Fireman's Fund Ins. Co.,* 133 Ga. App. 220, 223 (2) (211 SE2d 145) (1974), and has no real relevance to the "faith" with which International subsequently refused the demand for payment under the terms of the policy as it existed. Furthermore, even assuming that Harden met his burden of demonstrating "bad faith" it is clear that International raised, as a matter of law, a reasonable defense which vindicated its "good faith" in refusing Harden's demand. "Bad faith" does not exist if there is a doubtful *question of law* involved and a close question as to interpretation of policy provisions is presented. *U. S. Fidelity & Guar. Co. v. Woodward,* 118 Ga. App. 591, 594 (2) (164 SE2d 878) (1968). Whether or not a disabling heart attack is a "sickness originating after the date of this policy" as to an insured with a pre-existing heart condition is, insofar as our research reveals, a question of first impression in the context of credit disability insurance. See *Blue Cross v. Grenwald,* 148 Ga. App. 486, 489 (3) (251 SE2d 585) (1978). "Having carefully reviewed the record, the statutory and case law applicable . . . we hold that the insurer was legally justified in litigating the issue and cannot, as a matter of law, be liable for the statutory penalty for bad faith under Code Ann. § 56-1206." *State Farm Mut. Auto. Ins. Co. v. Bass,* 231 Ga. 269 (201 SE2d 444) (1973).

3. International enumerates as error the trial court's failure to charge specifically that Harden could not recover if the sickness which disabled him originated before the policy went into effect. We find this argument meritless. The charge as given adequately covered Harden's burden of proving his case. Furthermore, since International "at the trial did not request this charge and did not object to the charge without this addition, [it] has waived [its] rights and has no standing to complain on appeal. [Cits.] . . . 'failure to except before verdict generally results in a waiver of any defects in the charge [cits.], the exception under Code Ann. § 70-207 (c) applying only when there has been a substantial error which was blatantly apparent and prejudicial, and which resulted in a gross miscarriage of justice. [Cits.] Since the verdict returned was within the range of the testimony . . . there is no miscarriage of justice.' [Cit.]" *Durrett v. Farrar,* 130 Ga. App. 298, 306 (203 SE2d 265) (1973).

4. Remaining enumerations of error relate to the issue of "bad faith" under Code Ann. § 56-1206 and are rendered moot by the holding in Division 2, supra.

5. The only error in the case being the award of "bad faith"

attorney's fees, the judgment is affirmed with direction that the portion thereof awarding attorney's fees be written off.

*Judgment affirmed with direction. Deen, P. J., and Banke, J., concur.*

DECIDED MAY 4, 1981.

*William R. Waldrop,* for appellant.
*William C. Lanham, Clark H. McGehee,* for appellee.