**J.B. GILES, d/b/a Hertz System Licensee, Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant.**

**Civ. A. No. 82–49–ATH.**

United States District Court,
M.D. Georgia,
Athens Division.

Jan. 30, 1984.

---

Jim Hudson, Athens, Ga., for plaintiff.

Anthony J. McGinley, Atlanta, Ga., for defendant.

## ORDER

OWENS, Chief Judge.

Presently before the court are the parties' cross-motions for summary judgment on the construction of a contract for insurance. The parties having agreed upon a stipulation of facts and the issue being one of law under Official Code of Ga.Ann. § 13–2–1 (Ga.Code Ann. § 20–701), the court now finds and concludes the following:

*Findings of Undisputed Material Fact*

Plaintiff, J.B. Giles, d/b/a Hertz System Licensee, has at all times pertinent to this lawsuit operated a Hertz car rental agency in Athens, Georgia. On July 1, 1981, a Business Auto Policy of insurance, policy number BA 905 05 26, issued by defendant National Union Fire Insurance Company of Pittsburgh, Pa., took effect on plaintiff's fleet of rental cars and was in effect at the time of the loss complained of herein.

One of the cars making up plaintiff's fleet of rental vehicles and covered by the aforementioned insurance policy was a 1979 Ford Thunderbird. Since September, 1981, plaintiff had been trying to sell the Thunderbird and replace it with a newer model. Toward that end plaintiff left the car at Trussell Ford in September to be sold.

After having no success at selling the Thunderbird plaintiff began renting it again. From December, 1981, to early February, 1982, the car was rented on nine different occasions. Sometime after February 5th plaintiff, intending once again to sell the car and replace it with a newer model, delivered it to Brack Rowe Chevrolet in Athens. On March 29, 1982, the Thunderbird was stolen from Brack Rowe's lot. The "Black Book" value of the car as of February 8, 1982, was $4,160.00.

Some time shortly after the theft of the car, plaintiff filed a claim with defendant under the provisions of the policy of insurance issued to him (and for which he was paying an average monthly premium of $782.53)[1] for the actual cash value of the Thunderbird.

Defendant has at all times subsequent to the filing of plaintiff's claim maintained that the Thunderbird ceased to be covered under the plaintiff's insurance policy when it was removed from the rental fleet and placed on a car dealer's lot for sale. In support of its position that the Thunderbird was not a covered vehicle under the terms of the policy, defendant relies upon Endorsement No. 1 which describes the automobiles which are covered by the subject policy and provides as follows:

> Only those autos held by you for rental to others on a short-term basis (less than twelve months); or used in connection with your business of renting autos to others; or used for other than rental purposes by you, or any Partner or Executive Officer of the named insured and while residents of their households, their spouses and relatives of either.

Plaintiff relies upon the same Endorsement No. 1 in support of his position that the Thunderbird was a covered vehicle under the terms of the policy.

---

1. The court refers to an average monthly premium because the premium charges varied proportionately with the gross receipts. Defendant charged premiums as follows: $6.69 per $100.00 gross receipts for liability coverage; $2.46 per $100.00 gross receipts for collision coverage; and $0.50 per $100.00 gross receipts for comprehensive coverage.

## Conclusions of Law

■ The construction of a contract of insurance, like any contract, is a question of law for the court. Official Code of Ga.Ann. § 13–2–1. In *Greer v. IDS Life Ins. Co.*, 149 Ga.App. 61, 253 S.E.2d 408 (1979) the Georgia Court of Appeals explained that:

> In construing an insurance policy, '[t]he test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney.' *Nationwide Mut. Fire Ins. Co. v. Collins*, 136 Ga.App. 671, 675, 222 S.E.2d 828, 831. 'Where a provision in a policy is susceptible to two or more constructions, the courts will adopt that construction which is most favorable to the insured. [Cit.]' *Prudential Ins. Co. of Am. v. South*, 179 Ga. 653, 656, 177 S.E. 499, 501. *See also Welch v. Professional Ins. Corp.*, 140 Ga.App. 336, 231 S.E.2d 103.

*Id.* at 63, 253 S.E.2d at 409.

In the instant action the dispute centers around the proper construction to be given Endorsement No. 1 of the policy. Endorsement No. 1, which describes the automobiles covered by the policy, consists of three different clauses. An automobile is covered under the policy if it falls within any one of the three clauses.

Clause 1 provides that those automobiles held by the insured for rental to others on a short-term basis will be covered. Clause 2 provides that those automobiles used in connection with the insured's business of renting automobiles to others will be covered. Clause 3 provides that those automobiles used for other than rental purposes by the insured and certain other specified individuals will be covered.

Under the undisputed facts of this case, neither Clause 1 nor Clause 3 would extend coverage to the Thunderbird. The question is whether Clause 2 provides coverage.

Plaintiff urges that an ordinary, commonsense reading of "in connection with your business of renting autos to others" would include a car which was being sold to make room for a newer model. Defendant urges that Clause 2 is aimed at providing coverage for automobiles which are being used as vehicles in connection with the business of renting autos—such as shuttle vans to transport prospective customers from a boarding gate to the rental lot of an airport. Defendant further argues: (1) that the Thunderbird was not being "used" at all at the time it was stolen; (2) that an automobile which is placed on a retail car dealer's lot to be sold is not accruing rental charges and therefore, no premium is being paid to cover the risk of loss to such automobile; and (3) that even if the car was in use at the time it was stolen, there is no connection between the sale of the automobile and plaintiff's business of renting automobiles to others.

■ Clause 2 of Endorsement No. 1 provides coverage to those autos "used in connection with [the insured's] business of renting autos to others." This clause is written in very broad and general terms—it is void of any specifics as to what constitutes "use in connection with the business of renting autos to others." Accordingly, this court, mindful of the test articulated by the Georgia Court of Appeals in *Greer* for construing policies of insurance, finds that Clause 2 of Endorsement No. 1 of the subject insurance policy provides coverage to plaintiff's Thunderbird which had been placed on a retail car dealer's lot to be sold in order to make room for a newer model.

This construction of Clause 2 of Endorsement No. 1 is mandated for several reasons. One, the broad and general language making up the clause, in the absence of any qualifiers specifying what constitutes "use in connection with the business of renting autos to others," would be understood by a reasonable person in the position of the insured to afford coverage to the Thunderbird. Two, it is a matter of common knowledge that car rental agencies periodically sell older car in their fleets

in order to replace them with newer models. As a matter of law, this court must hold that plaintiff's action in placing the Thunderbird on a retail car dealer's lot to be sold in order to replace it with a newer model was a "use in connection with the business of renting autos to others." Three, defendant's contention that affording plaintiff coverage for the Thunderbird somehow gives him more than that to which he is entitled because all the while that the automobile sat on the car dealer's lot it was not accruing rental charges and therefore, no premium was being paid to cover the risk of loss, is totally without merit.[2] Four, defendant's assertion that Clause 2 was intended to provide coverage only in those situations in which automobiles are being used as vehicles in connection with the business of renting automobiles (such as shuttle vans) is informative, but irrelevant. It makes no difference as to what Clause 2 was intended to cover if it was not properly drafted to reflect that intent. Defendant chose the very broad and general language of the endorsement which on its face encompasses and provides coverage on plaintiff's Thunderbird. Having chosen to use this broad and general language, defendant cannot now attempt to assign a restrictive meaning to the endorsement which is not apparent from a careful reading of it.[3]

It is thus the considered opinion of this court that the language of Clause 2 of Endorsement No. 1 covers the theft of plaintiff's Thunderbird. Accordingly, plaintiff's motion for summary judgment on the question of defendant's liability is hereby GRANTED.

### Question of Bad Faith Refusal to Pay

Plaintiff, pursuant to Official Code of Ga.Ann. § 33–4–6 (Ga.Code Ann. § 56–1206), contends that defendant's refusal to pay under the subject policy was in bad faith and seeks statutory damages and attorney's fees. Plaintiff, although agreeing that the question of coverage was one that could be decided on motion for summary judgment, nonetheless made a demand for jury trial in the instant action.

As was stated by the court in *Georgia Int'l Life Ins. Co. v. Harden,* 158 Ga.App. 450, 454, 280 S.E.2d 863, 866 (1981): " 'Bad faith' is shown by evidence that under *the terms of the policy* upon which the demand is made the under the facts surrounding the response to that demand, the insurer had no 'good cause' for resisting and delaying payment." The question of bad faith is typically a jury issue unless the court finds that a doubtful question of law was involved and that the insurer was legally justified in litigating the issue. *Allstate Ins. Co. v. Ammons,* 163 Ga.App. 385, 294 S.E.2d 610 (1982). A defense which would bar a finding of bad faith is one "which raises a reasonable question of law or a reasonable issue of fact...." *Georgia Int'l, supra,* 158 Ga. App. at 454, 280 S.E.2d at 866.

In the instant action this court has no alternative but to find that no doubtful question of law existed and that defendant was not legally justified in litigating the

---

**2.** First, the whole time that the Thunderbird was at the car dealer's lot, it was available as a rental car if needed. Second, taking defendant's argument to its logical conclusion, any time an automobile is not actually accruing rental charges, there is no premium being paid to cover the risk of loss to such an automobile. Accordingly, under defendant's theory, the automobile would not be covered when merely sitting outside plaintiff's place of business available for rent. Also, defendant chooses to ignore that an automobile is not accruing rental charges while being used by plaintiff for personal business, yet coverage is afforded plaintiff under the policy in this situation. Third, in view of the fact that plaintiff was paying in the neighborhood of $800.00 per month, on the average, in premiums, defendant's suggestion that plaintiff was somehow receiving "something for nothing" is difficult to understand.

**3.** Of course, even though this court is convinced that Clause 2 is clear on its face and applies to the Thunderbird, were this court to find that the clause was ambiguous as to coverage, the clause would have to be most strongly construed against the party drafting it—the net result being that coverage would be afforded plaintiff on the Thunderbird. Official Code of Ga.Ann. § 13–2–2(5).

issue of coverage. Defendant's defense raised neither a reasonable question of law nor a reasonable issue of fact.

As was stated previously, the broad and general language of Clause 2 of Endorsement No. 1, on its face, encompasses and provides coverage on plaintiff's Thunderbird. This court cannot comprehend how any insurer, in view of the language used in the endorsement and the substantial premiums paid each month by plaintiff, would be justified in disputing coverage under the facts of this case. Accordingly, this is an appropriate case for the issue of bad faith refusal to pay to be submitted to a jury. Absent notification from the parties that this issue has been settled as to the amount of damages and attorney's fees, the matter will be set down for trial during the next term of court.

### Conclusion

Plaintiff's motion for summary judgment on the question of defendant's liability under the subject policy of insurance is hereby GRANTED. Pursuant to Rule 54(b), Federal Rules of Civil Procedure, this court, finding that there is no just reason for delay, directs the clerk to enter final judgment in favor of plaintiff as to defendant's liability under the subject policy of insurance.