**Dennis D. HALL, Plaintiff,**

v.

**TIME INSURANCE COMPANY, Defendant.**

**Civ. A. No. 85–11–ATH (WDO).**

United States District Court,
M.D. Georgia,
Athens Division.

June 19, 1987.

Herbert T. Hutto, Athens, Ga., for plaintiff.

Harvey S. Gray, Atlanta, Ga., for defendant.

## ORDER

OWENS, Chief Judge.

This case is brought by Dennis D. Hall in order to recover under a policy of insurance issued by Time Insurance Company (Time). By agreement of the parties, this case has been submitted to the court for a decision on the merits based upon the evidence in the record. The parties, therefore, have waived any right to a trial by jury that they might otherwise have been entitled to in this case.

### Factual Background

Dennis D. Hall was formally married to Claudia Elizabeth Hall in August of 1968. As a result of that marriage, he had a son, Aubrey Scott Hall, in 1973. Pursuant to the terms of his divorce decree from Claudia E. Hall, which was entered into in 1981, Mr. Hall agreed to maintain health insurance coverage for his son Aubrey Scott Hall. Up until December 31, 1982, Mr. Hall satisfied this requirement of his divorce decree by maintaining a group health insurance policy at his place of employment. When this coverage was no longer available, Mr. Hall, on February 1, 1983, applied for a policy with Time. This policy provided coverage for Mr. Hall, his new wife, and his son Aubrey S. Hall.

In the policy application, which has been attached to and made a part of the Time Insurance policy, Mr. Hall represented that neither himself, his wife Angela, or his son Aubrey S. Hall, were covered by any other health insurance policies. It appears that, in fact, on the date that Mr. Hall applied for insurance with Time, Aubrey S. Hall was an insured under a policy of major medical insurance issued by Sentry Insurance Company and Blue Cross/Blue Shield. The coverage on Aubrey Scott Hall had been obtained by Mr. Hall's former wife. It further appears that Mr. Hall was unaware of the coverage obtained by his former wife at the time he applied for insurance with Time.

In November of 1983, Aubrey S. Hall sustained a cerebral hemorrhage, and as a result of these injuries has incurred and will continue to incur substantial medical expenses. Subsequent to Aubrey S. Hall's hospitalization, Mr. Hall applied for the benefits under the Time insurance policy. After receiving the claim by Mr. Hall, Time became aware of the other insurance maintained by Aubrey S. Hall. Based upon this other insurance, Time denied Mr. Hall's claim and tendered a check for all premiums paid less amounts previously paid out to Mr. Hall. Upon receipt of this check, Mr. Hall negotiated it on July 6, 1984. Two letters sent to Mr. Hall prior to the disbursement of the check informed him of Time's position concerning payment under the policy. *See* attached exhibits A and B.

### Accord and Satisfaction

■ The first issue the court as trier of fact must decide is whether the negotiation of the $2,028.81 check by Mr. Hall constituted an accord and satisfaction. Under Georgia law, an accord and satisfaction occurs,

... where the parties to an agreement, by a subsequent agreement, have satisfied the former agreement, and the latter agreement has been executed. The execution of a new agreement may itself amount to a satisfaction of the former agreement, where it is so expressly agreed by the parties; and, without such agreement, if the new promise is founded on a new consideration, the taking of it is a satisfaction of the former agreement.

*See* O.C.G.A. § 13–4–101 (1982). The Georgia legislature has further clarified this doctrine by delineating what would not constitute an accord and satisfaction. Georgia law specifically provides that,

(b) Acceptance by a creditor of a check, draft, or money order marked "payment in full" or with language of equivalent condition, in an amount less than the total indebtedness, shall not constitute an accord and satisfaction unless:

(1) A bona fide dispute or controversy exists as to the amount due; or

(2) Such payment is made pursuant to an independent agreement between the creditor and debtor that such payment shall satisfy the debt.

*See* O.C.G.A. § 13–4–103(b) (1982). In other words, in order to demonstrate an accord and satisfaction, one must show more than just mere acceptance of a check that contains limiting conditional language. It must *also* be shown that, at the time of the tender, a bona fide dispute or controversy existed as to the amount due or that there was an independent agreement that acceptance of the check would satisfy the debt. *See Sunbelt Life Insurance Company v. Bank of Alapaha,* 176 Ga.App. 628, 629–30, 337 S.E.2d 410, 412 (1985); and cases cited therein.

Time does not contend that prior to disbursing its check the parties had reached an independent agreement that such payment would satisfy the debt owed Mr. Hall, nor has there been presented any evidence of such an agreement. Section 13–4–103(b)(2) is, therefore, inapplicable. Time does contend, however, that a bona fide dispute or controversy existed as to the amount due when Mr. Hall negotiated its check, and, therefore, section 13–4–103(b)(1) is applicable to this case. The evidence on this point leads the court to make the following findings of fact:

(1) The letter dated May 14, 1984, sent by Time to Mr. Hall was received by Mr. Hall. The contents of this letter were thereby made known to Mr. Hall prior to his cashing of the check. *See* Exhibit A;

(2) The letter which was included with the check, dated May 18, 1984, was received by Mr. Hall. The contents of this letter were also thereby made known to Mr. Hall prior to the cashing of the check. *See* Exhibit B;

(3) The check itself does not contain any limiting conditional language. *See* Exhibit C;

(4) At the time plaintiff cashed the check he was under the belief that as long as the representations made to Time in the application form were made truthfully and to the best of his knowledge, Time was legally obligated under the policy of insurance.

■ Based upon these findings of fact the court concludes that there was not a sufficient meeting of the minds to constitute an accord and satisfaction in this case. *See ADP–Financial Computer Services, Inc. v. First National Bank of Cobb County,* 703 F.2d 1261, 1265–66 (11th Cir. 1983). In none of the letters sent to plaintiff was it ever communicated to him that negotiation of the $2,028.81 would prejudice or in any way be a final settlement of the dispute between plaintiff and Time. In fact, the limiting conditional language normally found on the check itself, *i.e.,* in full settlement, payment in full, etc., was not present on the check disbursed to plaintiff. To an objective viewer, Time's actions did not sufficiently convey that its check was intended to fully settle the dispute between plaintiff and Time, and, therefore, this court holds that there was not an accord and satisfaction in this case.

### The Misrepresentation Defense

The next issue ·the court must decide is whether plaintiff's failure to disclose the presence of other insurance coverage already maintained on Aubrey S. Hall was sufficiently material to the acceptance of the risk arising from the policy such that Time is legally allowed to rescind the policy. The statutory law of Georgia is that misrepresentations, omissions, concealment of facts, and incorrect statements "should not prevent a recovery under the policy or contract unless:

(1) Fraudulent;

(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise." *See* O.C.G.A. § 33- 24-7 (1982).

The pertinent questions asked by Time in its application for insurance was:

(a) Are any persons on this application covered by, or has application been made for any of the following type insurance? If yes, indicate details:

(1) Medical Insurance: Answer No

(2) Disability Insurance: Answer No

(3) Life Insurance: Answer No

The policy application further contains the following language:

I represent to the best of my knowledge and belief that all statements and answers on this application and any medical exam are complete and true ...

which is followed by plaintiff's signature.

■ With respect to section 33–24–7(b)(1) that allows an insurer to rescind a policy of insurance if a representation is fraudulent, the court finds that there is no evidence that Mr. Hall was aware of any insurance maintained by his former wife at the time he applied for a policy of insurance with Time. The court finds that Mr. Hall did not learn of that fact until the day his son was operated on for his injuries. *See* Deposition of Aubrey Dennis Hall, p. 17. There is, therefore, no evidence of fraud on the part of Mr. Hall in this case.

■ The second basis for a right of rescission on the part of Time is section 33–24–7(b)(2) which requires that the misrepresentation be material to either the acceptance of the risk or to the hazard assumed by the insurer. Georgia law has construed this materiality requirement and has found that the increase in the risk under the policy must be substantial, as opposed to an infinitesimal or imaginary increase, before an insurer would be allowed to rescind the policy. *See Preston v. National Life and Accident Insurance Company*, 196 Ga. 217, 234, 26 S.E.2d 439, 448 (1943); and *Mutual Benefit Health & Accident Ass'n v. McCranie*, 178 F.2d 745, 747 (5th Cir. 1949). In addition, Georgia law is clear that an objective test should be used in determining whether the misrepresentation was material. *See Sentry Indemnity Co. v. Brady*, 153 Ga.App. 168, 264 S.E.2d 702 (1980) (Material misrepresentation is one that would influence a prudent insurer in deciding whether to accept risk). As the factfinder in this case, the court makes the following findings on this issue.

In the affidavit of Bernard L. Webb, a professor of actuarial science and insurance at Georgia State University, Mr. Webb states that the presence of other insurance is material to the risk assumed by Time because it creates "a tool for financial enrichment." In other words, the insured can collect twice for the medical expenses incurred, and this double payment of medical expenses, in turn, would increase the cost of both insurance and medical care for all consumers. The court finds this evidence of increased risk, however, to be speculative at best, and not sufficient to warrant a recission of the policy. Especially where, as in this case, the person insured, Aubrey S. Hall, is not the person who actually secured the extra insurance. In order to find a profit motive sufficient to increase Time's risk under the policy, the court would first have to find that a significant number of parents would be potentially willing to either injure their child or, at minimum, would be willing to take affirmative steps designed to increase the risk of harm to their child. The likelihood that parents would obtain extra health insurance with this scheme in mind appears to the court to be actuarially insignificant. Cases in Georgia which have found the presence of other insurance to be materially significant to the risk assumed appear to be limited to property insurance cases, and cases wherein the person actually applying

for the insurance is also the injured insured. *See, e.g., Washington v. Interstate Fire Insurance Company*, 163 Ga.App. 15, 293 S.E.2d 485 (1982); and *Wood v. National Benefit Life Insurance Company*, 631 F.Supp. 6 (N.D.Ga.1984). In these situations, it is clear that a person might be more willing to destroy personal property, or negligently maintain it in the hope that it will be destroyed, in order to make a profit. In addition, in extreme cases persons may even be willing to commit suicide to gain the proceeds of life insurance. Yet, the number of reported instances in which a parent has injured his/her own child to collect surplus insurance proceeds are few, if any. The court, therefore, refuses to accept, as trier of fact, Mr. Webb's opinion concerning the materiality of the representation made by Mr. Hall that his child, Aubrey S. Hall, maintained no other health insurance.

Mr. Webb further states that where coverage is provided under more than one medical insurance policy, medical teatment is often over utilized, and, therefore, the risk assumed by the policy would be greater. This argument only makes sense, however, in those cases wherein the policy limits of the subject policy stand to be exceeded by the over-utilized treatment. In this case, Dennis D. Hall applied for a $1,000,000 medical insurance policy. Where such a large policy has been issued, the possibility of unnecessary procedures being performed exists regardless of the existence of the significantly smaller policy maintained by Aubrey S. Hall's mother. The court, therefore, finds that the existence of the other policy under these circumstances did not increase Time's risk under its policy.

Finally, Time contends that section 33–24–7(b)(3) provides another basis for it to rescind the policy in question. Under that section, the court must find that the insurer in good faith would either not have issued the policy or would not have issued a policy in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer. The key language of this provision is that the insurer must demonstrate its good faith before it can rescind the policy. Time's good faith should be determined in the same manner that the court determined whether the misrepresentation was material, namely by looking at the prudent insurer and determining whether such an insurer would have issued the policy. *See generally, Misrepresentations and Nondisclosures in the Insurance Application*, 13 Ga.L.Rev. 876, 921–33 (1979).

Time has submitted the testimony of John A. Hilderbrandt, who is employed by Time as a manager in their underwriting department. He testified that Time's underwriting policy strictly prohibits the issuance of major medical insurance coverage for any person who is covered by other major medical or disability insurance. He further testified that had Time known of the other medical insurance maintained by Aubrey Scott Hall that was in effect on the date Time's application was completed, Time would not have issued insurance coverage for Aubrey S. Hall. Bernard L. Webb supports Mr. Hildebrandt's statements by stating that Time's underwriting policy in this regard is both reasonable and consistent with practices in the insurance industry generally.

In contrast to these statements, however, is the testimony of Time's sales agent, Cecil Jennings. He states that based upon his experience as an insurance salesman, individual group and accident policies are written on insureds that have other available medical insurance. *See* deposition of Cecil Jennings, pp. 11–12, 15. The court finds this evidence to be more credible than the self-serving statement of Time's underwriting manager or its expert witness. Accordingly, the court, as trier of fact, accepts the statements made by Mr. Jennings that the mere presence of other insurance is not a *per se* reason to reject an applicant's request for insurance, and, further,

finds that had they known the true facts, Time, acting in good faith, would not have rejected coverage on Aubrey S. Hall solely because of this other insurance. *See Pennsylvania Life Insurance Co. v. Tanner*, 163 Ga.App. 330, 333–34, 293 S.E.2d 520, 523 (1982) (similar expert underwriter evidence rejected by jury).

Because the court has found that Time did not have any right to rescind the policy in question, and because an accord and satisfaction was not worked in this case, the court rules that Time is obligated under the subject policy of insurance to Aubrey S. Hall for all medical expenses incurred during the period of time in which the policy was in effect. The court must now address the issue of damages.

### Damages

With respect to the amount of medical expenses properly payable under Time's policy of insurance to Aubrey S. Hall, the court hesitates deciding this question solely on the record before it. Especially since Aubrey S. Hall's injuries appear to be continuing in nature and the most recent information the court has is over six months old. The court instructs, therefore, the parties to hereby supplement the record with all medical expenses they contend are owed under the policy at present.

■ Mr. Hall further claims that bad faith penalties and reasonable attorney's fees should be awarded in this case, pursuant to O.C.G.A. Section 33–4–6 (1982). Plaintiff contends that he has demonstrated that Time's failure to pay under the insurance policy was in bad faith, and, thus, such damages are appropriate. While the court somewhat agrees with plaintiff's position, as a trier of fact it must decide whether Time had *any* reasonable grounds when it refused to pay under its policy of insurance. In this case the court finds that while it did not accept the testimony of Time's witnesses to allow a recission of the policy, this issue of fact is sufficient to bar a finding of bad faith on

Time's part. *See Giles v. National Union Fire Insurance Co.*, 578 F.Supp. 376 (M.D. Ga.1984) (A defense which would bar a finding of bad faith is one which raises a reasonable question of law or a reasonable issue of fact). Accordingly, the court finds that plaintiff is not entitled to an award of reasonable attorney's fees or bad faith penalties in this case.

In summary, the court finds that Time Insurance Company is liable up to the policy limits to Aubrey S. Hall for all medical expenses properly payable under its policy. For the reasons stated, the court reserves judgment on the actual amount of expenses incurred by Aubrey S. Hall to date, and hereby requests that the parties submit within forty-five (45) days an itemized list of all expenses they contend are payable under the policy at present. The court further finds that plaintiff is not entitled to bad faith penalties and attorneys fees for Time's refusal to pay under the policy.

### EXHIBIT A

### TIME INSURANCE COMPANY

May 14, 1984

Mr. Dennis D. Hall
Route Two, Jefferson River Road
Athens, GA 30604

Dear Mr. Hall:

Policy 1975884
Dennis Hall

During the course of our consideration of your recent claim for benefits under the above policy, we received information regarding existing coverage not reported on the application which was reported to us by our benefit department. However, this information was not reported on the Application for Insurance a copy of which is included in the policy.

Had we been aware of this information when we originally considered your application we would have been unable to issue coverage. Therefore, we must now Set Aside the policy effective with the Policy Date of February 1, 1983.

You will be hearing further from our Policyholder Service Department regarding this action and the appropriate refund of premium.

Cordially,

Judy Levenhagen
Associate Underwriter

### EXHIBIT B

**TIME INSURANCE COMPANY**

May 18th, 1984

Mr. Dennis D. Hall

PO Box 6433

Athens, GA 30604

Policy # 1975884

Dear Mr. Hall:

The above policy has been Set Aside as of the original effective date of February 1, 1983.

We are refunding all premiums paid, less any claims which may have already been paid. Enclosed is our check in the amount of $2028.81.

If you should have any questions concerning this matter, please feel free to contact our office.

Sincerely,

/s/ Judy Poeschl
(Mrs.) Judy Poeschl
Correspondent
Policy Change Department

Enclosure: Check $2028.81