Dennis D. **HALL, Plaintiff–Appellee,**

v.

**TIME INSURANCE COMPANY, Defendant–Appellant.**

No. 87–8878.

United States Court of Appeals, Eleventh Circuit.

Sept. 6, 1988.

---

Harvey S. Gray, Fortson and White, Atlanta, Ga., for defendant-appellant.

Sandra M. Baumwald, Herbert T. Hutto, Fortson, Bentley and Griffin, R.A., Athens, Ga., for plaintiff-appellee.

Before HILL and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

As part of a divorce agreement and as required by the divorce and custody decree, Dennis Hall agreed to purchase medical insurance for his minor child. The child apparently was in the custody of the child's mother. Hall purchased a policy, effective as of February 1, 1983, from Time Insurance Company. On the application for insurance, Hall represented that the child was not covered by any other insurance policies. Hall's former wife had obtained two other policies insuring the child, however. Hall maintains that at the time he made the representation he did not know that his former wife had obtained additional coverage, and his claim is not disputed.

A few months after Hall purchased the insurance policy from Time, the child suffered a cerebral hemorrhage. The district court found that plaintiff proved the child had medical expenses of $119,402.28. R1–31–3. According to uncontroverted assertions by Time, the other two insurance carriers covering Hall's child have paid $159,589.17 in insurance benefits for the child, thus covering the $119,402.28 in expenses. In accordance with Georgia law, the Time policy cannot and does not contain a provision for proration or excess treatment in the event of duplicate coverage.

After Time received Hall's claim, it became aware that Hall had incorrectly represented that the child had no other insurance coverage. Time refused to pay the claim; in March of 1984 Hall contacted the Insurance Commissioner's office about Time's refusal to pay, and an investigation was apparently made.

While the investigation was pending, Time informed Hall by a letter dated May 14, 1984, that it was setting aside his policy as of its issuance date because of the misrepresentation as to existing insurance coverage. The letter explained that Hall would "be hearing from our Policyholder Service Department regarding this action and the appropriate refund of premium." *Hall v. Time Ins. Co.*, 663 F.Supp. 599, 605 (M.D.Ga.1987).

On May 18, 1984, Time mailed Hall a second letter, again explaining that the "policy has been Set Aside" and that the company was refunding "all premiums paid, less any claims which may have already been paid." *Id.* Enclosed in the letter was a check payable to Hall for $2028.81. On July 6, 1984, Hall negotiated the check. *Id.* at 600.

On May 20, 1986, a Georgia state court held Hall in contempt for failing to pay a portion of the hospital charges and medical expenses incurred on behalf of the child. R1–26. Hall filed the present suit against Time, and the district court found that Time was liable to Hall, *Hall*, 663 F.Supp. at 604, in the amount of $115,761.28. R1–31–3. Time appealed.

Time maintains that Hall's negotiation of the check refunding his premiums constituted accord and satisfaction. Alternatively, Time suggests that the misrepresentation as to other coverage voided the policy. The district court found no accord and satisfaction, and so dealt with the additional issue of the misrepresentation. We find the correspondence and negotiated check accomplished an accord and satisfaction, and we need not address the second contention.

Georgia law strictly limits the situations to which accord and satisfaction may apply:

(b) Acceptance by a creditor of a check, draft, or money order marked "payment in full" or with language of equivalent condition, in an amount less than the total indebtedness, shall not constitute an accord and satisfaction unless:

(1) A bona fide dispute or controversy exists as to the amount due; or

(2) Such payment is made pursuant to an independent agreement between the creditor and debtor that such payment shall satisfy the debt.

Ga.Code Ann. § 13–4–103(b) (1982).

The district court found that Hall knew the contents of the letters from Time and yet cashed the check. Nevertheless, since Hall believed Time was legally liable under the insurance policy, the court concluded that the parties could not have reached a meeting of the minds sufficient to constitute accord and satisfaction. *See ADP-Financial Computer Services v. First Nat. Bank*, 703 F.2d 1261, 1265–66 (11th Cir. 1983). The court stated: "[i]n none of the letters sent to plaintiff was it ever communicated to him that negotiation of the $2,028.81 would prejudice or in any way be a final settlement of the dispute between plaintiff and Time." *Hall*, 663 F.Supp. at 601.

 The district court clearly erred in finding that the letters did not inform Hall that depositing the check would end the dispute between Hall and Time. Time could not have been clearer in expressing its intent to refund the premiums rather than honor the contract. Even if the district court was correct in finding that Hall believed Time was still liable under the policy, the fact that the parties differ as to liability or the extent of liability is the very basis for an accord and satisfaction under section 13–4–103(b)(1). Although the parties must intend to reach an accord and satisfaction, *ADP-Financial*, 703 F.2d at 1265–66, they need not agree or intend to agree that a judicial resolution of the underlying dispute would result in a particular solution.

Applying section 13–4–103(b), we conclude that the $2028.81 check resolved "[a] bona fide dispute . . . as to the amount due." Ga.Code Ann. § 13–4–103(b)(1) (1982). At least one Georgia court has suggested that for the dispute to have been "bona fide," the insurer must have acted in good faith. *Lewis v. Alfred L. Simpson & Co., Inc.*, 358 S.E.2d 262, 263 (Ga.App. 1987). In Georgia a material misrepresentation can prevent recovery under an insurance policy if "[t]he insurer in good faith would . . . not have issued the policy or contract . . . if the true facts had been known to the insurer. . . ." Ga.Code Ann. § 33–24–7(b)(3) (1982). Time presented testimony that it would have refused to issue the policy had it known of the double coverage. We find that the testimony evidences grounds for disagreement sufficient to constitute a "bona fide dispute" within the purview of the statute.[1]

 On appeal Hall raises for the first time the issue of whether the 1984 amendment to Ga.Code Ann. § 33–24–44(c) (1982) ought to change the result in this case. Section 33–24–44 deals with cancellation of insurance policies the existence of which is not denied; in Hall's case, however, the insurance company relied upon the misrepresentation to void the contract from its inception. Consequently, section 33–24–44 is irrelevant to the case at hand. *See Sunbelt Life Ins. Co. v. Bank of Alapaha*, 176 Ga.App. 628, 337 S.E.2d 410, 411 (1985) ("cancellation" discharges insurer from future liability, and must occur before disputed loss).

The judgment by the district court is REVERSED.

---

1. Hall suggests that the dispute was not bona fide since the parties did not differ as to the amount of premium refund due. The argument skirts the central tenet of accord and satisfaction. "Accord and satisfaction occurs where the parties to an agreement, by a subsequent agreement, have satisfied the former agreement, and the latter agreement has been executed." Ga. Code Ann. § 13–4–101 (1982). Here the underlying agreement is the insurance policy. Hall and Time reached a subsequent agreement in which Time tendered and Hall accepted a $2028.81 check as satisfaction of the rights and liabilities of the parties under the first contract. Hall now may feel he made a bad deal, but the amount he received as accord and satisfaction is not at issue.