366 So.2d 634 (1978)
G. L. PARET, Plaintiff-Appellant,
v.
LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY, Defendant-Appellee.
No. 6763.
Court of Appeal of Louisiana, Third Circuit.
December 20, 1978.
Rehearings Denied January 31, 1979.
Writs Refused March 16, 1979.
*635 Raggio, Farrar, Cappel & Chozen, Richard A. Chozen, Lake Charles, for plaintiff-appellant.
Camp, Carmouche, Palmer, Barsh & Hunter, James E. Williams, Lake Charles, for defendant-appellee.
Before DOMENGEAUX, WATSON and GUIDRY, JJ.
WATSON, Judge.
Plaintiff, G. L. Paret, filed this suit to recover benefits for nursing care under a group health policy issued by defendant, Louisiana Health Service & Indemnity Company (Blue Cross of Louisiana). Paret asked benefits which, at the time of trial, amounted to $51,235.60, the same amount in penalties, and reasonable attorney's fees. Defendant contended that the nursing services were excluded under the policy and reconvened for benefits paid by mistake. A jury, by a nine to three vote, denied Paret indemnity for the nursing services and awarded Blue Cross a $55,000 reimbursement. Paret has appealed, contending that the jury verdict is manifestly erroneous.
The benefits in question were claimed under the major medical endorsement to the policy, which states in pertinent part:
"`Major Medical Expenses' means customary, necessary and reasonable charges (excluding all charges or benefits excluded in the Basic Contract, unless expressly included in this Endorsement) incurred by the Subscriber in excess of any benefits provided under the Basic Contract, less any applicable deductible, for: (P-6, TR. 212).
* * * * * *
11. Services of a Registered Professional Nurse (R.N.) and of a Licensed Practical Nurse (L.P.N.) duly licensed under the laws of the state where the service is rendered, provided they are not related to the Subscriber by blood, marriage or adoption." (P-6, TR. 213).[1]
Defendant maintained at trial that the nursing services were not covered because of an exclusion in the basic coverage for: "(d) Convalescent, custodial or sanitaria care or rest cures." (P-6, TR. 188).[2] The major medical endorsement states that the exclusions of the basic coverage are applicable to the endorsement except where they conflict. In the latter event, the provisions of the major medical endorsement prevail.[3]
*636 The jury was charged by the judge that the major medical endorsement of the policy provided benefits for nursing services if the other conditions of the policy were met; that the exclusion for custodial care did not apply to the major medical coverage of the policy; and that the classification of nursing care as therapeutic or custodial did not affect the question of coverage. The jury apparently disregarded these instructions.
It is undisputed that the nurses rendering services to plaintiff Paret were unrelated to him and were licensed by the State of Louisiana. The jury's conclusion that the nursing services were not covered by the policy is manifestly erroneous in light of the instructions given by the trial judge. The first question presented by the appeal is whether the trial judge erred as a matter of law in his interpretation of the policy.

PERTINENT TESTIMONY
Ms. Medora T. Gill, a licensed practical nurse, began performing services for Mr. Paret on February 8, 1976, working on the 7:00 A.M. to 3:00 P.M. shift at the Paret home. She testified that she had worked continually, relieving another L.P.N. when she arrived and being replaced by another when she left, except for brief periods of vacation time when she would get a substitute L.P.N. She identified a long list of other licensed practical nurses who had done substitute nursing. The three shifts had been filled primarily by Ms. Gill, Ms. Fontenot and Ms. Jerry Dikes. Ms. Gill testified that Mr. Paret had been blinded by a stroke and had to be fed. He was ambulatory at times. Her services included administering medication and taking his blood pressure at least twice on each shift, because the patient's blood pressure fluctuated alarmingly and his medication had to be varied accordingly. Ms. Gill said that the nurses' notes were edited to avoid upsetting the patient's family. High blood pressure readings were sometimes omitted and conveyed directly to Dr. DeLaureal, the treating physician.
Dr. Thomas Hugh DeLaureal, an expert in the field of internal medicine, testified that Mr. Paret suffered a stroke in June of 1975 which required hospitalization and resulted in blindness. The patient was released from the hospital with the stipulation by Dr. DeLaureal that he have constant attendance by skilled nurses on a twenty-four hour basis. Dr. DeLaureal testified that this prescription had continued until the date of trial. In Dr. DeLaureal's expert opinion, Mr. Paret would have died without this nursing care. The stroke on June 5, 1975, was considered by Dr. DeLaureal to be the onset of an illness which had continued until the time of trial.
Patricia Soileau, employed as a bookkeeper and secretary for Mr. Paret, testified that $51,235.60 was owing as of May 12, 1978. The separate claims had been submitted by her with the nurses' receipts and Ms. Paret's cancelled checks.
It was stipulated that attorney for plaintiff used seventy-nine hours in preparation for trial.
Dr. Philip M. Castro, Medical Director of Blue Cross, testified that he was requested to review the Paret claim because of the large sums being paid. His review of the nurses' notes convinced him that Mr. Paret's care was custodial. Dr. Castro testified that the insurance contract excluded custodial care but, after objection, the jury was instructed that the doctor was only testifying as to his impression of the insurance contract. Dr. Castro advised Dr. DeLaureal by letter that the care being rendered was custodial, which was excluded under the terms of the contract. (P-3). Dr. DeLaureal replied that the care was not custodial but necessary for Mr. Paret's survival. (P-4). After consultation with Dr. Ed Comer, a medical director in the New Orleans' office of Blue Cross, two other physicians, two executives of Blue Cross and the Blue Cross legal counsel, Dr. Castro concluded that benefits were only payable for nursing *637 care for three months following Mr. Paret's discharge from the hospital. Dr. Castro testified that his decision was based on the assumption that custodial care was not covered by the policy.
Hampden R. White, staff attorney for Blue Cross reviewed the Paret claim to determine whether the claim was custodial, as opposed to therapeutic, and sought outside legal advice as to the company's possible liability if the claim were not paid. On the basis of the advice received from the general counsel for Blue Cross and discussions with other people, benefits were terminated.
An offer of proof was made relative to Exhibit D-4, a letter from the law firm of Kennon, White & Odom, advising the Blue Cross staff attorney that there was no Louisiana jurisprudence on whether Blue Cross was obligated to pay the Paret claim; it was a res nova issue. The trial judge refused to admit the proffer as hearsay.

CONCLUSION
In a suit to recover benefits under a policy, the insurer has the burden of proving facts which limit its liability. Massachusetts Protective Ass'n v. Ferguson, 168 La. 271, 121 So. 863 (1929). Construction of unambiguous terms in a policy is a matter of law rather than fact, and any exclusion from coverage must be clear and unmistakable. Jones v. Standard Life and Accident Insurance Co., 115 So.2d 630 (La.App. 2 Cir. 1959) writ denied. If more than one interpretation of an exclusion is reasonable, the one affording coverage to the insured will be adopted.
In the instant case, nursing services constitute a major medical supplement to the basic coverage and, if they are excluded under certain circumstances, the policy should make the exclusion clear. Compare Arkansas Blue Cross-Blue Shield, Inc. v. Tomkins, 256 Ark. 370, 507 S.W.2d 509 (1974). The trial court correctly charged the jury that the exclusion in question did not apply to the major medical coverage, and the jury erred in disregarding the instruction.
The insurer, itself, interpreted the policy as providing coverage for nursing services and paid for them until the amount claimed caused a reversal on the ground that the nursing care was "custodial". It is not at all clear that "custodial" nursing care is excluded and therefore the trial judge's charge was correct. Compare Reading v. Richardson, 339 F.Supp. 295 (D.C.1972). However, even conceding for argument's sake that it is excluded, "custodial" care is that "marked by or given to watching and protecting rather than seeking to cure", Webster's Third New International Dictionary. To apply this definition to skilled nursing care would be strained construction, although all nursing care involves some element of watching and protecting the patient. Here, the nurses administered shots and monitored Mr. Paret's blood pressure in order to determine the necessary medication. These services are beyond those involved in merely watching a patient to see that he does himself no injury.
The second question is whether defendant is liable for penalties and attorney's fees under LSA-R.S. 22:657, which provides a penalty of double the amount of benefits due ". . . unless just and reasonable ground, such as would put a reasonable and prudent business man on his guard, exist." for nonpayment. Even if an issue is res nova in this state, an insurer may be cast for penalties. McCutchon v. Mutual of Omaha Ins. Co., 354 So.2d 759 (La.App. 4 Cir. 1978) writ denied 356 So.2d 1012 (La.). However, in view of the jury's determination that benefits were not due under the policy, we must reluctantly conclude that the insurer's decision not to pay the claim was based on reasonable grounds. Therefore, penalties and attorney's fees will not be assessed.
For the foregoing reasons, the judgment of the trial court herein is reversed and set aside.
It is ordered, adjudged and decreed that there be judgment herein in favor of G. L. Paret, and against Louisiana Health Service & Indemnity Company in the amount of *638 $51,235.60, together with legal interest from date of judicial demand until paid; G. L. Paret's demands for penalties and attorney's fees are dismissed; the reconventional demand of Louisiana Health Service & Indemnity Company is dismissed; and all costs in the trial court and on appeal are taxed against Louisiana Health Service & Indemnity Company.
REVERSED AND RENDERED.
GUIDRY, J., concurs in the denial of penalties and attorney's fees and assigns written reasons.
DOMENGEAUX, J., concurs in part and dissents in part and assigns reasons.
GUIDRY, Judge, concurring.
I agree with the author's disposition of plaintiff's claim for recovery of benefits and dismissal of Blue Cross' reconventional demand. I concur in the denial of penalties and attorney's fees.
Although we ultimately determine, contrary to defendant's contention, that the provisions of the Blue Cross policy excluding coverage are subject to more than one reasonable interpretation and are thus ambiguous, Blue Cross' interpretation of its own policy provisions is reasonable. Under such circumstances, in my view, Blue Cross cannot be said to have been arbitrary and capricious in its denial of benefits. Under LSA-R.S. 22:657 it is not every denial of benefits which subjects the insurer to penalties and attorney's fees, rather for an insured to recover additional benefits etc., under the cited section, it must first be established that the insurer acted without "just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard". Although there are many cases holding to the effect that an insurer cannot escape the payment of penalties and attorney's fees on the ground that it misinterpreted a provision of its own policy (Thomas v. Universal Life Insurance Company, 201 So.2d 529 (La.App. 3rd Cir. 1967); Sanders v. General American Life Insurance Co., 364 So.2d 1373 (La.App. 3rd Cir. 1978)) a close reading of these cases indicates that penalties and attorney's fees were allowed because it was determined that the insurer placed an unreasonable or strained interpretation upon otherwise plain provisions. In cases, such as the instant case, where the insurer denies benefits upon a reasonable interpretation of its policy provisions and benefits are allowed only after judicial ascertainment that the subject provisions are susceptible of more than one reasonable interpretation, it cannot be said that the insurer acted arbitrarily or without just and reasonable grounds. As stated by our brethren of the Fourth Circuit in Valladares v. Monarch Insurance Company, 282 So.2d 569 (La.App. 4th Cir. 1973):

"Certainly in light of the fact that a bona fide dispute existed between the litigants and that this case presents a matter of first impression in our jurisprudence, defendant acted reasonably in refusing to pay this claim. While we disagree with the interpretation defendant placed on the policy we do not find defendant's actions violative of the above quoted statute." (Emphasis mine)
See also Cotlar v. Gulf Insurance Company, 318 So.2d 923 (La.App. 4th Cir. 1975).
For these reasons I respectfully concur.
DOMENGEAUX, Judge, concurring in part and dissenting in part.
I agree with the result reached in this case insofar as we find plaintiff entitled to benefits and insofar as we reject the insurer's reconventional demand. I must disagree, however, with the denial of penalties and attorney's fees under La.R.S. 22:657.
The majority opinion supports the denial of penalties and attorney's fees on the basis that, since the jury determined that benefits were not due under the policy, the insurer's refusal to pay was based upon reasonable grounds. However, we have concluded in this case that the jury's verdict was manifestly erroneous because the jury failed to follow the instructions given by the trial judge. In view of the result we reach in this case, the conclusion is inescapable that, had the jury correctly followed the trial judge's instructions, benefits would *639 have been awarded. I fail to see how a manifestly erroneous conclusion on the part of the jury can be equated with reasonableness on the part of the insurer. In my view, the erroneous jury verdict is irrelevant and of no consequence with regard to the issue of penalties and attorney's fees.
I also disagree with the reasons given for the denial of penalties and attorney's fees by the concurring opinion. The proposition advanced therein is to the effect that an insurer can escape penalties and attorney's fees simply by placing a reasonable construction on ambiguous clauses used in its insurance contract, which construction would result in the denial of benefits, where another reasonable construction would result in granting benefits.
It has never been my understanding of the law that an insurer could escape payment of penalties and attorney's fees by using ambiguous language in its policy which, under one reasonable interpretation would afford coverage, and under another reasonable interpretation would not, and then advancing the latter interpretation as a basis for denying benefits when the insured makes a claim. I see no reason for denying penalties and attorney's fees in this situation.
Public policy gives rise to the proposition that ambiguities placed into insurance contracts are undesirable. The insured ought to be capable of ascertaining with certainty whether he is protected from a particular risk of loss by his insurance policy. It has long been established both statutorily and jurisprudentially that ambiguities are construed against the insurer, because it is the insurer who drafts the contract. It seems to me that the insurer ought to know that if a Court is confronted with an insurance contract which is subject to two or more reasonable interpretations, and is thereby ambiguous, the Court is going to use the interpretation which supports coverage. Any denial of coverage by a Court will be on the basis of the facts of the case, not on the acceptance of a reasonable interpretation advanced by an insurer which would result in denying coverage. Under the views expressed in the concurring opinion, an insurer, in effect, would be permitted to use ambiguity as a shield for avoiding penalties and attorney's fees when it denies benefits which, under a judicial interpretation, are due the insured.
A review of the cases in this area does not unmistakably give rise to the conclusion that penalties and attorney's fees are due only when an unreasonable, as opposed to a reasonable, interpretation is given to an ambiguous clause in a policy by an insurer. Certainly, if the policy clearly affords coverage, or if the insurer's interpretation of an ambiguous policy is unreasonable, the case for awarding penalties and attorney's fees is much stronger; but the reasonableness or unreasonableness of the insurer's interpretation is not the critical factor. On the contrary, many cases do not even bother to discuss whether the insured's interpretation was reasonable or unreasonable because this is not the deciding point.
The rule of law in these cases is simply framed in terms to the effect that an insurer may get a judicial construction of it policy, but it must do so at its own risk and expense, not that of the insured. E. g., Seguin v. Continental Service Life & Health Insurance Company, 230 La. 533, 89 So.2d 113 (1956); Sanders v. General American Life Insurance Company, 364 So.2d 1373 (La.App. 3rd Cir. 1978); Albert v. Cuna Mutual Insurance Society, 255 So.2d 170 (La.App. 3rd Cir. 1971); Niles v. American Bankers Insurance Company, 229 So.2d 435 (La.App. 3rd Cir. 1969), writ denied 255 La. 479, 231 So.2d 394 (1970).
These above cases give no indication that the only reason penalties and attorney's fees were awarded was solely because the insurer's interpretation of its ambiguous policy was unreasonable, and, had the insurer's interpretation been reasonable, but incorrect, penalties and attorney's fees would not have been imposed.
In essence, the problem amounts to the following: If the insurer bases its denial of benefits solely upon a particular interpretation of its policy, and the Court determines that the insurer's interpretation was incorrect, *640 then penalties and attorney's fees should be awarded. If, however, the insurer bases its denial of benefits upon a reasonable construction of the facts of the case, and the Court gives another construction to the facts so as to award benefits, then, in that event, the insurer could be reasonable in its actions, and penalties and attorney's fees could be denied. See Albert v. Cuna Mutual Insurance Society, supra, at p. 175.
Accordingly, I respectfully submit that penalties and attorney's fees should be awarded in this case.

ON APPLICATION FOR REHEARING
WATSON, Judge.
On application for rehearing, the defendant has suggested for the first time that LSA-R.S. 22:657 is not applicable to the penalty issue. (The original opinion did not award penalties and attorney's fees but analyzed the issue under the provisions of LSA-R.S. 22:657). The group policies in question provide benefits only for hospital, medical and dental care and, therefore, according to the latest expression of the Louisiana Supreme Court, they are not health and accident policies covered by LSA-R.S. 22:657. See Tabb v. La. Health Services & Indemn. Co., 361 So.2d 862 (La., 1978).
Under Tabb, the policies would be subject to the "arbitrary, capricious or without probable cause" test of LSA-R.S. 22:658, rather than the "just and reasonable grounds" test of LSA-R.S. 22:657. The denial of penalties in our original opinion was correct; the analysis under Tabb as suggested by defendant strengthens that conclusion.
Rehearing denied.
DOMENGEAUX, J., votes to grant a rehearing for the reasons assigned in his original concurring and dissenting opinion.
NOTES
[1] The policy language was changed, effective April 15, 1977, to read as follows:

"`Major Medical Expenses' means the usual, customary and reasonable charges for Health Care incurred by the Member which are prescribed by the attending Physician for specified services in the Basic Coverage, and:
* * * * * *
8. Services of a Registered Professional Nurse (R.N.) and of a Licensed Practical Nurse (L.P.N.) licensed under the laws of the state where the service is rendered, provided the R.N. or L.P.N. is not related to the Member by blood, marriage, or adoption." (P-7, TR. 267).
[2] The exclusion in the 1977 policy reads: "3. custodial, or sanitarium care, or rest cures;" (P-7, TR. 256). There are eight specific major medical exclusions in this policy but they do not include item (3).
[3] "All of the definitions, procedures, conditions, limitations, and exclusions of the Basic Contract are adopted herein and are deemed to be applicable to the coverage afforded by this Endorsement, unless they are in conflict with express provisions of this Endorsement, in which case the latter provisions shall be deemed controlling in the interpretation hereof." (P-6, TR. 212).

and
"All of the definitions, procedures, conditions, limitations, and exclusions of the Basic Coverage are applicable to this Endorsement, unless they conflict with the provisions of this Endorsement. If the provisions of the Basic Coverage do conflict with those of this Endorsement the provisions of this Endorsement will prevail." (P-7, TR. 267).