**Karin K. KINZIE, Appellant,**

v.

**PHYSICIAN'S LIABILITY INSURANCE CO., Appellee.**

**No. 65358.**

Court of Appeals of Oklahoma, Division No. 1.

Sept. 22, 1987.

Rehearing Denied Nov. 24, 1987.

Certiorari Denied Feb. 23, 1988.

**1141**

Jack L. Kinzie, Laura J. Stakley, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, for appellant.

Kent F. Frates, Michael K. Harrah, Frates & Farris, Oklahoma City, for appellee.

REYNOLDS, Judge:

As an employee of the Oklahoma City Clinic, Karin Kinzie obtained comprehensive medical insurance coverage from Physician's Liability Insurance Co. (hereinafter referred to as "PLICO"), effective May 1, 1982. In September, 1982, Mrs. Kinzie began treatment at the Oklahoma City Clinic for infertility. She received both outpatient surgery as well as inpatient surgery and hospitalization for an attempted tuboplasty. This surgery was designed to surgically repair Mrs. Kinzie's fallopian tube, obstructed by adhesion formation, in the hope that she could become fertile.

The expenses of the surgical treatment were deemed by PLICO to be covered by the terms of the policy, which provided that PLICO would pay "reasonable and customary charges for medically necessary services...."

Mrs. Kinzie was subsequently diagnosed as having secondary failed tuboplasty, the surgical procedure having been unsuccessful. She was then referred to the Hillcrest Fertility Clinic in Tulsa, where a child was conceived by the in vitro fertilization procedure.

On February 7, 1984, Mrs. Kinzie submitted a claim for reimbursement of expenses for the conception of the child by means of in vitro fertilization. PLICO denied coverage on March 23, 1984 for the stated reason that the in vitro fertilization procedure was not medically necessary.

Mrs. Kinzie then initiated the present lawsuit, and upon Motions for Summary Judgment being filed by both parties, the trial court granted summary judgment in favor of PLICO.

Summary judgment is appropriate if there is no substantial controversy as to any material fact, and it appears that any party is entitled to judgment as a matter of law. *Sellers v. Oklahoma Pub. Co.*, 687 P.2d 116 (Okl.1984).

When reviewing a summary judgment, this Court must examine the record to determine what facts are material to the cause of action and whether the evidentiary materials introduced indicate no substantial controversy as to any material fact. *Thompson v. Madison Machinery Co.*, 684 P.2d 565 (Okl.App.1984). The reviewing court may affirm the granting of a summary judgment if any proper ground exists to support the ruling. *Lindsey v. Dayton–Hudson Corp.*, 592 F.2d 1118 (10th Cir. 1979).

The trial court ruled as a matter of law that in vitro fertilization was not a medically necessary service because it was elective and was not required to cure or preserve Mrs. Kinzie's health. The court further ruled that it was not medically necessary to a woman's health to give birth to a child. We agree.

The only genuine issue to be determined was the meaning of the term, "medically necessary."

The existence of ambiguity in the language of a contract is a decision to be made by the trial court. *Mercury Inv. Co. v. F.W. Woolworth Co.*, 706 P.2d 523 (Okl. 1985). If the court determines that the language is not ambiguous, the construction of the contract is also a matter of law for the court. *Ferrell Const. Co., Inc. v. Russell Creek Coal Co.*, 645 P.2d 1005 (Okl.1982).

Appellant cites several cases from other jurisdictions in which courts have disagreed on the meaning of similar terminology. Compare *Abernathy v. Prudential Insurance Co. of America*, 274 S.C. 388, 264 S.E.2d 836 (1980) (equating "necessary" with appropriate); *Van Vactor v. Blue Cross Ass'n.*, 50 Ill.App.3d 709, 8 Ill.Dec. 400, 365 N.E.2d 638 (1977) (interpreting "medically necessary" to require that the services be prescribed in good faith by a physician); *Fassio v. Montana Physicians' Service*, 170 Mont. 320, 553 P.2d 998 (1976) (suggesting that "necessary services" requires that the services be prescribed and performed by a licensed physician); *Victum v. Martin*, 367 Mass. 404, 326 N.E.2d 12 (1975) ("necessary" means wise in the light of facts known at the time rendered); *Group Hospitalization, Inc. v. Levin*, 305 A.2d 248 (D.C.App.1973) ("necessary" means reasonably calculated to shorten and relieve an ordeal of agonizing pain and thereby effectuate the most rapid recovery possible); and *Aetna Life Insurance Co. v. Sanders*, 127 Ga.App. 352, 193 S.E.2d 173 (1972) (finding the physician's recommendation entitled to great weight under the language "necessary to the treatment").

However, none of the above cases are instructive in the context of the present fact situation. In all of the cases cited above, the medical services conducted were performed to the insured's body in order to physically alleviate or correct a serious illness, disease or affliction.

The infertile condition of Mrs. Kinzie's body was not corrected by in vitro fertilization. Although Mrs. Kinzie and her husband did indeed become parents, Mrs. Kinzie's infertile medical condition was in no way reversed or cured.

In construing an insurance contract, its terms and words, if unambiguous, must be accepted in their plain, ordinary and popular sense. *United States Fidelity and Guaranty Co. v. Briscoe*, 205 Okla. 618, 239 P.2d 754 (1951). The language in an insurance policy should be interpreted in the way it would be understood by the average person. *Safeco Ins. Co. of America v. Davis*, 44 Wash.App. 161, 721 P.2d 550 (1986).

Turning to the word "necessary," Webster's Ninth New Collegiate Dictionary (1985 Ed.), at 790, defines it as: "[As a noun:] * * * an indispensable item: ESSENTIAL * * *. "[As an adjective:] la: of an inevitable nature: INESCAPABLE b(1): logically unavoidable (2): that cannot be denied without contradiction c: determined or produced by the previous condition of things d: COMPULSORY 2: absolutely needed: REQUIRED."

We do not believe that the in vitro fertilization procedure was "indispensable," "essential," "unavoidable," "compulsory," or "required."

Under the present factual situation, the term, "medically necessary" was not ambiguous. The conception of a child, although certainly important to married couples who have a problem conceiving, was not "medically necessary" to the physical health of the insured. The trial court did not err in its conclusion of law.

■ A contract must be interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting. 15 O.S.1981, § 152. In vitro fertilization was not a "medically necessary" service contemplated by either of the parties at inception of the contract.

■ Mrs. Kinzie also argues that PLICO was estopped from denying coverage since PLICO had previously covered outpatient and inpatient surgery for treatment of her infertility.

An insurer may by his action or conduct be estopped from denying that his policy affords coverage for a risk which the insured has been led honestly to believe was assumed under the terms of the policy. *Security Ins. Co. of New Haven v. Greer,* 437 P.2d 243 (Okl.1968).

However, in this case, we find nothing in the record to support this claim. Mrs. Kinzie was never led to believe that she would be reimbursed for the in vitro fertilization procedure by PLICO. PLICO covered only treatment which was "medically necessary" to physically cure or reverse Mrs. Kinzie's infertile condition.

The record also fails to support Mrs. Kinzie's claim that PLICO is liable in tort for damages. Liability in tort arises only where there is a showing that the insurer, in bad faith, withholds payment of the claim of its insured without any justification. *Norman's Heritage Real Estate v. Aetna Casualty & Surety,* 727 F.2d 911 (10th Cir.1984). We find no evidence in the record of bad faith on PLICO's part.

AFFIRMED.

ROBINSON, P.J., and GARRETT, J., concur.