FORET, Judge.
This is a suit to recover benefits under a health and accident insurance policy.
The trial court, after trial, rendered judgment in favor of plaintiffs for $3,800.76, which were the benefits due under the terms of the policy, together with a statutory penalty of $3,800.76, plus $5,000 attorney’s fees in accordance with La.R.S. 22:657, et seq.; plus legal interest on the benefits due commencing thirty days after the date of the claim; plus legal interest on the penalties and attorney fees from the date of judicial demand; and for all costs.
American Health has filed this appeal, urging, in essence, that the trial court judgment was wrong in all respects. The Cok-ers have answered the appeal, asking that the award of attorney’s fees be increased for appeals work, and further asking that the penalties be increased to 200% of the amount of benefits due.
Our learned brother below has favored us with excellent reasons for judgment; we indulge ourselves the liberty of adopting these reasons as our own, save for minor editorial changes:
“This is a suit by Albert and Phoebe Coker against American Health and Life Insurance Company wherein the Cokers sought to recover on a major medical policy that had been issued to Albert Coker’s employer, Energy Trucking Corporation.
“The parties submitted this case on stipulated facts. See Joint Stipulation that was submitted April 1,1986 and the amended stipulation No. 9 filed on July 21, 1986.
*132 “The stipulated facts establish that Albert and Phoebe Coker were insured under the major medical policy that had been issued by American Health to Energy Trucking, and the policy had an effective date of July 1, 1984 as it applied to the Cokers.
“Phoebe Coker became ill and incurred medical expenses totalling $5,569.45 and the bills representing these expenses were submitted to American Health. The bills reflect that these expenses were incurred between June 30, 1984 and July 17, 1984.
“Key Life Insurance Company had issued a group major medical insurance policy to Energy Trucking which provided the Cokers with hospitalization insurance, but this policy’s effective date ended on June 30,1984. A separate lawsuit has been filed by the Cokers against Key Life for the expenses listed above. Those proceedings were made part of this case by reference.
“The record reflects, through allegations, that Key Life’s successor, Continental Service Life and Health Insurance Company, was placed in rehabilitation in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana. A Stay Order was issued ... [out of] the 19th Judicial District Court staying all proceedings against Key Life and Continental Life and neither party to the instant suits has been notified nor have they ascertained if any payments would ever be made to the Cokers under the Key Life policy.
“The medical conditions of Phoebe Coker which necessitated her treatment between June 30, 1984 and July 17, 1984 were ‘preexisting conditions’, and the expenses began before the effective date of the American Health policy and continued after the effective date of July 1, 1984.
“American Health admits that Phoebe Coker’s medical bills that were incurred after July 1, 1984 would be payable under its policy if it were not for the ‘pre-existing condition’ clause in its policy. The ‘pre-ex-isting condition’ provisions are found at page 20 of the American Health Policy and provide:
‘Expenses NOT covered
NO benefit will be payable for expenses incurred:
1. for or in connection with a pre-exist-ing condition unless such expenses are incurred after expiration of:
a. A period of 180 consecutive days which ends while the insured is covered under this policy and during which the Insured receives no treatment, medication, or consultation from a physician in connection with such condition, or
b. A period of 12 consecutive months during which the Insured is continuously ... [insured] under this Section.
The term ‘pre-existing condition’ means an Injury or Sickness for which the Insured receives treatment, medication, or diagnosis from a physician during the 180 day period immediately preceding the date he or she becomes insured under this Section. Any condition related to such Injury or Sickness will be considered a pre-existing condition.’
“The parties further stipulated that the ‘pre-existing condition’ provision had to be read in connection with the ‘No Loss-No Gain Takeover Provisions’ of the policy found at page 29 and which provides:
‘No Loss-No Gain Takeover
If this policy replaces another group policy providing medical benefits and the employer member has 15 or more employees covered by this policy for medical benefits, or if required by State law, the provisions of this policy are modified as follows:
1. Credit shall be given for expenses providing full or partial satisfaction of any deductibles or waiting periods under the prior plan during the calendar year of takeover to the extent that such expenses are covered under this policy.
2. Benefits under this policy that would be limited by the pre-existing condition exclusion will be paid, not to exceed the lesser of:
a. benefits that would have been paid under the prior policy; or
*133 b. benefits under this policy without application of the pre-existing condition exclusion.’
“The parties also stipulated that both the ‘pre-existing exclusion’ provisions and ‘takeover’ provisions were in effect under American Health’s Policy and the ‘15 or more employees’ condition was met.
“A dispute existed initially as to whether Phoebe Coker had been assigned to the ‘Intensive Care Unit’ or a private room. An amended stipulation to No. 9 filed July 21, 1986 establishes that she was placed in ‘ICU’ and the ‘benefits’ should be $1425.00 instead of $875.00.
“The parties also offered the entire record in these proceedings into evidence.
"The plaintiff's demand letter on American Health, which was mailed 2/12/85 and received 2/15/85 was also introduced into evidence.
“The parties stipulated that American Health never paid any of plaintiff’s claims.
“Initially it should be noted that Louisiana has a ‘No Gain/No Loss’ statute. See LSA-R.S. 22:215.6. But the parties have not furnished the Court with sufficient evidence for a determination of whether this statute should be applied to the facts of this case; consequently, the Court will apply only the contract ‘No Gain/No Loss’ provisions in deciding this case.
“With limited research resources this Court could not find any case law interpreting the ‘No Gain/No Loss’ provision. But this is not necessary for the resolution of the principal issue in this case because the policy language is not ambiguous.
“The ‘pre-existing condition' provision (policy p. 20) of the American Health policy would exclude coverage in this case if it were not for the ‘No Gain/No Loss’ provision (Policy p. 29). This latter provision makes the ‘pre-existing condition provision’ ineffective where one group insurance policy with 15 or more employees is replaced by another with the same number of employees. Under the express language of ‘No Gain/No Loss’ provision the ‘pre-exist-ing condition’ exclusion does not apply. The inquiry then is whether that portion of the Key Life policy (Policy p. 5) which provides coverage after termination precluded coverage by American Life. Nothing in the ‘No Loss/No Gain’ provisions of the American Health policy excludes coverage nor would coverage be excluded by R.S. 22:215.6. The American Health Policy simply provides that if its policy (1) ... replaces another group policy (2) providing medical benefits, (3) and the employer member has 15 or more employees covered by this (American Health) policy then (4) the benefits under the American Health policy that would be limited by the pre-ex-isting condition exclusion will be paid not to exceed the lesser of the benefits under the prior policy or benefits under the American Health policy without the pre-existing condition exclusion. All four conditions mentioned above were met in this case and the plaintiffs can clearly recover under the American Health policy without resort to the benefits under the Key Life policy. It may be that American Health can proceed against Key Life under the ‘Coordination of Benefits’ provisions of its (American Health) policy (Policy p. 30), but that issue is not before the Court on the stipulated facts in this case.
“The final issue is penalties and attorneys fees.
“A health and accident insurer must pay an insured penalties of double the amount of the claim and an attorney’s fee if it fails to pay a claim ‘... within 30 days from the date upon which written notice and proof of claim ... are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard exists.’ LSA-R.S. 22:657 et seq. The Court is satisfied that more than 30 days have elapsed since the American Health received the plaintiff’s written demand and proof of loss. Did American Health have just and reasonable grounds, as would put a reasonable and prudent business man on his guard to deny payment of the claim in this case? American Health’s refusal is based on its interpretation of its policy. It has interpreted it to mean that (1) The ‘pre-existing condition exclusion’ excludes coverage and *134 if it does not because of the ‘No Loss/No Gain’ provision then (2) this latter provision does not provide coverage because the Key Life policy provided coverage to the plaintiff after termination.' An insurer must take the risk of misinterpreting its policy provisions. If it errs in interpreting its own insurance contract, such error will not be considered reasonable grounds for delaying the payment of benefits, and it will not relieve the insurer of the payment of penalties and attorney’s fees. Albert v. Cuna Mutual Insurance Society, 255 So.2d 170 (La.App. 3 Cir.1971); Sanders v. General American Life Insurance Company, 364 So.2d 1373 (La.App. 3 Cir.1978). Rushing v. American Income Insurance [Co.], 274 So.2d 458 (La.App. 3 Cir.1973). As a general rule, where an insurance policy is ambiguous, the Court will adopt any reasonable interpretation which favors the insured. Graham v. Equity National Life Ins. Co., 373 So.2d 988 (La.App. 3 Cir.1979), [writs denied, 376 So.2d 319 & 320 (La.1979)]. Even where issues are res nova, as in the instant case, an insurer may be cast for penalties. Paret v. Louisiana Health Ser. and Indem. Co., 366 So.2d 634 (La.App. 3 Cir.1978), [writ denied, 369 So.2d 139 (La.1979)]. Even though novel, there was nothing for interpretation in the policy provision in this case because the policy was clear and unambiguous. American Health took the risk of seeking a judicial determination of something which did not require such an interpretation, and, consequently, it must bear the consequences of its delay. This Court finds that American Health did not have ‘just and reasonable grounds to delay paying the claim in this case and must pay the plaintiffs a penalty of double the benefits due. The Court also finds that an attorney’s fee of $5000 will adequately compensate plaintiff for this statutory penalty.”
In passing on the Cokers’ answer to the appeal praying for additional attorney fees for appeal purposes, and increasing the amount of the penalty awarded to 200% of the claim, we find no merit to either request. The $5,000 attorney fee awarded by the trial court is ample for work done at the trial level and at the appellate level. As for plaintiffs’ demand for increase of the penalty to 200% of the amount due, again, we find no merit to that contention. See Bischoff v. Old Southern Life Insurance Co., 502 So.2d 181 (La.App. 3 Cir.1987).
The judgment of the trial court is affirmed, and costs of this appeal are assessed against defendant, American Health & Life Insurance Company.
AFFIRMED.