617 So.2d 1379 (1993)
James G. RALSTON, M.D. and Evelyn Darise Ralston, Plaintiffs-Appellees,
v.
CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 92-33.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1993.
*1380 Jackson B. Bolinger, Lafayette, for defendant-appellant.
Keith D. Jones, Baton Rouge, for plaintiffs-appellees.
Before GUIDRY, STOKER, KNOLL, THIBODEAUX and COOKS, JJ.
COOKS, Judge.
This is an appeal filed by an insurer from a summary judgment granting benefits, penalties and attorney's fees to its insured. Plaintiffs, Dr. James Ralston and his wife, Evelyn Ralston, filed suit seeking to recover benefits under a health insurance policy for expenses resulting from in vitro fertilization procedures. Connecticut General Life Insurance Company denied the claim as an uncovered expense under the policy based on the Company's interpretation that the charges were not essential for the necessary care and treatment of an injury, sickness or covered pregnancy.
Plaintiffs sought reimbursement of the claimed expenses, penalties and attorney's fees. Plaintiffs filed a motion for summary judgment on all issues, which the *1381 trial court granted. Defendant appealed contending the trial court erred in granting the summary judgment, penalties and attorney's fees. Plaintiffs answered the appeal seeking an increase in attorney's fees, damages for frivolous appeal, additional attorney's fees for the handling of this appeal and the assessment of all costs in the trial and appellate courts to defendant.

ISSUE
The issue is whether in vitro fertilization procedures are covered by health insurance policies which contain the standard language that medical expenses will be paid only "to the extent that the services or supplies are recommended by a physician and are essential for the necessary care and treatment of the injury, sickness or covered pregnancy."

LAW AND ANALYSIS
A dispute regarding whether, as a matter of law, the language of an insurance policy provides coverage to a party may be resolved by summary judgment. Pridgen v. Jones, 556 So.2d 945 (La.App. 3rd Cir.1990). Longstanding principles of law govern the interpretation of insurance policies. Ambiguous clauses in a policy are to be construed against the insurer. Lucito v. Louisiana Hospital Service, Inc., 392 So.2d 700 (La.App. 3rd Cir.1980). Construction of unambiguous terms in a policy is a matter of law rather than fact; and any exclusion from coverage must be clear and unmistakable. Paret v. Louisiana Health Service & Indemnity Company, 366 So.2d 634 (La.App. 3rd Cir.1978), writ denied, 369 So.2d 139 (La.1979). If more than one interpretation of an exclusion is reasonable, the one affording coverage to the insured will be adopted. Paret, supra. The insurer has the burden of proving the facts which limit coverage. Stewart v. Louisiana Farm Bureau Mutual Insurance Company, 420 So.2d 1217 (La.App. 3rd Cir.1982).
Appellant asks this court to review whether or not the use of artificial means to induce pregnancy is treatment for a "sickness" as that term is used in the insurance policy. The term "sickness" is set out in the policy as follows:
"SICKNESS. The term sickness means physical sickness, mental illness or pregnancy. A recurrent sickness will be considered one sickness unless the concurrent sicknesses are totally unrelated."
In Jennings v. Louisiana and Southern Life Insurance Company, 290 So.2d 811 (La.1974), the Louisiana Supreme Court, citing Webster's Third New International Dictionary, defined "sickness" as "the condition of being ill; ill health." It also defined "illness" as "a disordered, weakened, or unsound condition ... a form of disease" and then defined "disease" as "an impairment of the normal state of the living animal or plant body or any of its components that interrupts or modifies the performance of the vital functions, being a response to environmental factors (as malnutrition, industrial hazards, or climate), to specific infective agents (as worms, bacteria, or viruses), to inherent defects of the organisms (as various genetic anomalies), or to combinations of these factors ..."
In Baque v. Pan-American Life Insurance Company, 313 So.2d 293 (La.App. 3rd Cir.1975), writ denied, 318 So.2d 52 (La. 1975), this court defined treatment as the broad term covering all the steps taken to effect a cure of the injury or disease. This includes examination and diagnosis, as well as application of remedies. Appellant argues, under the reasoning of Baque, coverage does not exist because the procedure will not cure Mrs. Ralston's infertility by enabling her to conceive through ordinary means. We disagree with appellant's restrictive interpretation of both the terms of the insurance policy and this court's reasoning in Baque. Appellant's interpretation of this court's reasoning in Baque, supra, would result in the denial of insurance coverage upon treatment of any disease which has no known "cure." This interpretation of the term "treatment" does not accord with reason, common sense, or the ordinary practice within the insurance industry.
Mrs. Ralston's "sickness" is that her reproductive organs, viewed in the totality of *1382 their function, are not serving their intended purpose because of a malfunction apparently occurring at the stage when the egg naturally unites with the sperm. Under the above definitions, we find Mrs. Ralston's condition is not normal, that a vital function (the ability to reproduce) is impaired. In our view this constitutes a "sickness." The process of in vitro fertilization provides a remedy for this disorder within the reproductive organs. In vitro fertilization may result in pregnancy which serves the end purpose of the female's reproductive organs. This Court does not adopt appellant's reasoning that a procedure must effect a "cure" to qualify as treatment. When in vitro fertilization is successful, however, the sickness (the inability to reproduce) is cured. Thus, under the language of the policy, we find in vitro fertilization "essential for the necessary care and treatment" of Mrs. Ralston's infertility.
Appellant argues it issued a certificate rider, effective on March 1, 1991, which added a general limitation to the insurance policy excluding coverage for "in vitro fertilization, artificial insemination or similar procedures." Appellant informed plaintiffs, on February 21, 1991, that it would deny reimbursement for the in vitro fertilization procedure. The fact that the rider came after the denial of payment led the trial court to suggest this particular set of circumstances may have initiated the rider's dissemination. Regardless, it is clear the rider was issued too late to affect the outcome of this case.

PENALTIES AND ATTORNEY'S FEES
Appellant contends the lower court erred in finding it was arbitrary and capricious in its refusal to pay for Mrs. Ralston's treatment. The court then awarded penalties and attorney's fees as provided by LSA-R.S. 22:657. Under that statute, whenever a claim is properly presented under a health and accident policy, it must be paid within 30 days, unless just and reasonable grounds exist, such as would put a reasonable and prudent businessman on his guard that the claim is unjust. Cheramie v. Board of Trustees, 482 So.2d 742 (La.App. 1st Cir.1985), writ denied, 486 So.2d 734 (La.1986). Whether or not an insurer's reasons for refusal are just and reasonable grounds is a question of fact to be determined from the individual facts and circumstances of each case. Thompson v. Business Insurance Life of America, 413 So.2d 331, 337 (La.App. 3rd Cir.1982).
The only reason appellant gave to its insured for the refusal to pay the claim was a written statement by Daphne Murray, a supervisor for appellant, that "we do not consider artificial means to induce pregnancy an illness, therefore, expenses will be denied." No medical or statutory authority was introduced in support of this position. The only jurisprudence cited by appellant is an Oklahoma case, Kinzie v. Physician's Liability Insurance Company, 750 P.2d 1140 (Okl.App.1987), that is supportive of its position. This Court is unpersuaded by this other jurisdiction's reasoning.
The lower court noted the specific terms of the insurance policy did not expressly exclude coverage. Any exclusion from coverage in an insurance policy must be clear and unmistakable. If more than one interpretation of an exclusion is reasonable, the one affording coverage to the insured will be adopted. Stewart, supra. An insurer takes the risk of misinterpreting its own policy provisions. Such error will not be considered reasonable grounds for delaying the payment of benefits. Even when the issues involved are res nova an insurer may be cast for penalties. Coker v. American Health and Life Insurance Company, 525 So.2d 130 (La.App. 3rd Cir.1988).
The issue of whether just and reasonable grounds exist is a question of fact. The trial court's factual determination will not be disturbed on appeal unless clearly wrong. Landry v. Louisiana Hospital Service, Inc., 449 So.2d 584 (La.App. 1st Cir.1984). The lower court concluded the appellant's refusal to pay benefits was neither just nor reasonable under the circumstances, and awarded penalties in the *1383 amount of $9,104.39. The trial court's finding was based on the belief that a reasonable interpretation of coverage existed. The trial court further found the insurer had not met its burden of proving the facts which would limit coverage. After reviewing the record, we cannot say the trial court's findings and subsequent award of penalties and attorney's fees were an abuse of discretion. Accordingly, we will not disturb its determination.

ATTORNEY'S FEES
The lower court awarded attorney's fees in the amount of $5,000.00. Plaintiffs have answered the appeal requesting an increase in this award and additional attorney's fees for handling this appeal.
Counsel for the plaintiff suggests the attorney's fee award should have been controlled by the contingency fee contract he entered with his clients for one-third (1/3) of the recovery. Courts are not bound by the terms of a contingency fee contract in awarding attorney's fees. Rule 1.5 of the Louisiana Rules of Professional Conduct requires that a fee shall be reasonable; and further illustrates relevant factors to be considered in determining the reasonableness of a fee.
In assessing the appropriate amount of attorney's fees, the trial court took into consideration the nature of the case, the amount of work performed, and the complexity of the issues before setting the fees at $5,000.00. We find no abuse of discretion by the trial court in assessing the fees.
In response to plaintiff's request for additional attorney's fees for handling this appeal, we find such fees are not warranted. We note no brief was filed in support of the plaintiff's position. The amount awarded by the lower court is sufficient to cover the services rendered both at the trial level and on appeal.

FRIVOLOUS APPEAL
Plaintiffs answered the appeal and asked for damages under LSA-C.C.P. art. 2164 for a frivolous appeal. Damages for a frivolous appeal are not allowable unless it is clear the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocates, even if the court is of the opinion that such a view is not meritorious. Dubois v. State Through Dept. of Public Safety, 466 So.2d 1381 (La.App. 3rd Cir.1985). Although we do not find appellant's argument meritorious, plaintiff's request for damages for a frivolous appeal is denied.

DECREE
For the foregoing reasons, the judgment of the district court is affirmed. Plaintiffs request for an increase in attorney's fees, additional attorney's fees for the handling of this appeal, and damages for a frivolous appeal are denied.
AFFIRMED.
GUIDRY, J., dissents for the reasons assigned by STOKER, J.
STOKER, J., dissents and assigns written reasons.
STOKER, Judge, dissenting.
With respect I dissent. Defendant's policy provides in part:
"COVERED EXPENSES. The term Covered Expenses means the expenses actually incurred by or on behalf of a member or a dependent for the charges listed below but only if the expenses are incurred after such member or dependent becomes insured for Comprehensive Medical Benefits and only to the extent that the services or supplies provided are recommended by a physician and are essential for the necessary care and treatment of the injury, sickness or covered pregnancy." (Emphasis added.)
In my opinion, as a matter of law, in vitro fertilization procedures are not "essential for the necessary care and treatment" of infertility. Under the facts of this case, the terms "necessary ... treatment" are not ambiguous.
In Baque v. Pan-American Life Insurance Co., 313 So.2d 293 (La.App. 3d Cir.), *1384 writ denied 318 So.2d 52 (La.1975), which involved the issue of whether diagnostic tests and procedures constituted "treatment", we defined "treatment" as all the steps taken to effect a cure of the injury or disease. TABER'S CYCLOPEDIC MEDICAL DICTIONARY (14th Ed.) defines treatment as "1. Medical, surgical, or psychiatric management of a patient. 2. Any specific procedure used for the cure or the amelioration of a disease or pathological condition."
The in vitro fertilization procedures neither cured, managed nor ameliorated Mrs. Ralston's infertility. In vitro fertilization procedures are not designed or administered in the hopes that a recipient will become fertile. On the contrary, the procedures are designed to allow a recipient to conceive despite the infertility. If, in fact, a recipient were to conceive as a result of in vitro fertilization, the recipient's infertile condition would in no way be reversed or cured.
However, even if the term "treatment" were ambiguous, I am of the opinion that, as a matter of law, in vitro fertilization is not "necessary" but may be considered an elective procedure.
While not on point, Marsh v. Reserve Life Insurance Co., 516 So.2d 1311 (La. App. 2d Cir.1987), involved a claim for expenses incurred to reverse a tubal ligation so that the plaintiff could conceive and bear children. While that court found that the tubal ligation was expressly excluded under the policy, it also stated that it did not appear from the record that the surgery was medically necessary or that it was the result of any injury or sickness. Also, in that case, the initial tubal ligation was voluntary; however, that goes to the issue of whether the infertility was a "sickness", not whether the reverse tubal ligation was necessary.
Defendant cites Kinzie v. Physician's Liability Insurance Co., 750 P.2d 1140 (Okl.App.1987) in which the court held, as a matter of law, that in vitro fertilization was not a "medically necessary" service. In that case, the court explained that "[t]he infertile condition of Mrs. Kinzie's body was not corrected by in vitro fertilization. Although Mrs. Kinzie and her husband did indeed become parents, Mrs. Kinzie's infertile medical condition was in no way reversed or cured ... Under the present factual situation, the term, `medically necessary' was not ambiguous. The conception of a child, although certainly important to married couples who have a problem conceiving, was not `medically necessary' to the physical health of the insured ... In vitro fertilization was not a `medically necessary' service contemplated by either of the parties at inception of the contract." 750 P.2d at 1142.
In my opinion we should likewise find that in vitro fertilization is not "necessary care and treatment" for infertility. Accordingly, we should hold, as a matter of law, that the plaintiffs' claim is not a covered expense. For these reasons I dissent.